**TEXAS FARM BUREAU UNDERWRITERS, Appellant,**

v.

**Loyd HASTING, Appellee.**

**No. 6058.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 10, 1969.

Nunn, Griggs & Beall, Charles Griggs, Sweetwater, for appellant.

Jones & Milstead, Richard C. Milstead, Big Spring, for appellee.

OPINION

WARD, Justice.

The appellee, Loyd Hasting, brought this suit on two hail damage policies issued by the appellant, covering hail damage to his cotton crop. After a jury trial, judgment was entered in favor of appellee in the sum of $2,592.16, a larger amount of damages being offset by notes given for premi-

ums due on the policies. The appellee having testified that no proof of loss forms were ever signed by him, and having concluded his testimony in chief, the appellant was permitted to file a trial amendment, duly verified, placing in issue for the first time the failure of the appellee to comply with the proof of loss requirements set out in the policies, they being in the usual form making the furnishing of proper proof of loss a condition precedent to the enforcement of liability under the policies. No special issues were ever requested by the appellee relating to a waiver justifying the appellee's not having given the required proof of loss, nor was any objection made by him to the charge based upon the failure to submit a special issue on waiver as justification for his failure to furnish the proof of loss. Since no issues on waiver or estoppel were submitted, the only question before us on this appeal is whether, as a matter of law, the appellant waived the filing of the proof of loss or was estopped to assert the failure to file the same.

Fortunately, for our purposes the facts are practically undisputed, as the main disagreement related to the amount of loss. The two crop-hail insurance policies provided for protection against loss up to a total of $100.00 per acre on 103 acres of irrigated cotton, and $50.00 per acre on 50 acres of non-irrigated cotton. Both of the policies contained a ten per cent deductible provision; that is, the first ten per cent of any such loss was not covered by the insurance protection. On or about September 20, 1965, the appellee's farm suffered hail damage during the night. The next morning notice of loss forms were mailed to the appellant's office. Approximately two weeks later, two of the appellant's adjusters met with the appellee and made an inspection of his growing cotton crop and of the hail damage it had sustained. This inspection consisted of looking at various parts of the cotton farm and the counting of knocked-off bolls. At the conclusion of this inspection and in the presence of the appellee, the two adjusters proceeded to fill out proof of loss forms, each adjuster filing out a different proof of loss under each policy. According to the appellee and to the one adjuster, Mr. Harrison, who was called by the appellant and who testified, they filled in all of the blanks on the proof of loss forms and obtained all of the information that the appellant wanted or needed. The proof of loss forms on the dry land farm were filled in by the adjusters to show a 17% loss on 25 acres, they advising the appellee that the damage to the cotton on the irrigated farm was less than 10% and therefore was below his deductible limit. According to the undisputed testimony of the appellee and the adjuster, the proof of loss forms which were then tendered to the appellee for his signature also contained releases of liability of the appellant. Therefore, if the appellee had signed the proof of loss forms as tendered by the two adjusters, he would have settled and released the insurer, based on a damage of 17% to 25 acres of the dry land cotton. The adjusters then left, taking the unsigned but filled-in proof of loss forms with them. At this point, there develops the only difference in the testimony of the parties. The appellee testified that the adjusters told him that he could secure another adjuster or that he could wait until after he had harvested his crop, so that he could make a more accurate estimate of his damage. The adjuster who testified had no positive recollection about telling the appellee that he could get another adjuster, but he denied that he told him to wait until after harvest, but stated that sometimes the adjusters do wait. Regardless of this, the crop was harvested in December, and in January 1966, after the 91-day time limitation for filing a proof of loss had expired, one of the adjusters did return and meet with the appellee at the local office of the appellant. The adjuster, in keeping with the announced company policy of "once a statement is made on the field we don't back up", again offered to pay the appellee

based on only 17% damage to 25 acres of the dry land cotton, this being the same offer as had been previously made. The adjuster who testified next contacted the appellee in July 1966, who, at that time, offered to settle his claim on the basis of a 37% loss on all of his acreage, and at this time the adjuster raised his offer of compromise and settlement to 17% on 50 acres of the dry land cotton and 14% on the 103 acres of irrigated cotton. The parties being unable to agree to a settlement, the appellee placed the matter with his attorney who, in the fall of 1966, made further unsuccessful contacts with the appellant, until suit was filed in February 1967. The defendant answered by unsworn general denial and, later, by way of cross-action on the referred to promissory notes. The case proceeded to trial in June 1968. As stated, it was only after the appellee had rested that the appellant filed its trial amendment alleging, for the first time, a failure on the part of the appellee to file the sworn proof of loss, this being filed over the objection of the appellee. During all of the contacts between the appellee and the adjusters, they never offered the appellee the proof of loss forms, nor did they furnish such proof of loss form to their local agent and never advised appellee that it would be necessary for him to file a proof of loss or requested that he do so, other than the above-mentioned tendered proof of loss forms which contained the release and settlement which appellee had refused to sign in September 1966. In addition to these facts, the appellee was immediately paid by the appellant on another policy for hail damage to the roof of his house as a result of same hail storm.

■ We hold that the undisputed facts as stated establish conclusively that the appellant waived the filing of proof of loss within 91 days, and therefore the submission of waiver to the jury was not required. Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson, 351 S.W.2d 278 (Tex.Civ.App.1961, Houston), reversed on other grounds 361 S.W.2d 704; Benefit

Ass'n. of Ry., Employees v. O'Gorman, 195 S.W.2d 215 (Tex.Civ.App.1946, wr. ref. n. r. e.); Texas Farm Bureau Mutual Insurance Co. v. Carnes, 416 S.W.2d 863 (Tex. Civ.App.1967, Corpus Christi, err. ref. n. r. e.). In the first two cases the waiver was conclusively established by letters written to the insured, and in the last case by undisputed evidence that the adjuster stated that proof of loss would have to be filed when the case was settled. See also Hartford Fire Ins. Co. v. LaMon, 149 S.W.2d 157 (Tex.Civ.App.1941).

■ In the case before us, the adjuster admitted that all of the information that was necessary had been obtained on the proof of loss forms. All that was lacking was the signature and the requirement that the proofs be under oath. All of the necessary facts were written on the proof of loss forms in the presence of the insured by the adjusters themselves, and were taken by the adjusters some two weeks after the hail, and certainly well within the 91-day rule. Where it is required that a proof of loss be sworn, the receipt of a signed unsworn proof of loss and investigation of the loss has been held to be a substantial compliance with the policy provision as to proof of loss where at no time was there a complaint that the proof of claim was unsworn. Austin Building Co. v. National Union Fire Ins. Co., 403 S.W. 2d 499 (Tex.Civ.App.1966, Dallas, ref. n. r. e.); Agriculture Workers Auto Insurance Co. v. Lacy, 422 S.W.2d 31, Tex.Civ. App.; Anchor Casualty Company v. Bowers, 385 S.W.2d 568 (Tex.Civ.App.1964, Houston). While the Supreme Court reversed the last-cited case on other grounds (393 S.W.2d 168, 170), it expressly approved the Civil Appeals opinion with reference to the sufficiency of the proof claim, and further approved the rule as being that when defective proofs of loss are furnished the company, it must, within a reasonable time, object to the proofs, and point out the defects, so that the insured may, if he so desires, amend the same and cure the defects. The court further points

out that Rule 93(m) of the Texas Rules of Civil Procedure requires, in substance, that where a proof of loss is concerned and there is a denial of such proof of loss, such denial "shall be made specifically and with particularity". In our present case the appellant's plea was as follows: "The plaintiff wholly failed to comply with the written provisions of the contract of insurance sued upon which provides and says * * *" (with the provision of the policy being copied exactly). As stated in the Civil Appeals opinion under discussion, at page 570: "Instead of clearly and distinctly pointing out the defects in the proof of loss filed, this plea is global in its wording. It does not comply with the Rule and amounts to no plea. The presumption that a proper proof of loss had been filed arose and no evidence to the contrary could properly have been admitted." If the appellant wanted the proof signed and sworn, he should have said so specifically and with particularity.

A further reason waiver was established is due to the undisputed testimony that the proofs of loss tendered to the appellee contained the releases of all liability. A similar situation existed in the case of International Service Insurance Co. v. Brodie, 337 S.W.2d 414 (Tex.Civ.App.1960, Fort Worth, ref. n. r. e.). There the adjuster tendered a proof of loss in a form reflecting that it would be an agreement as to the amount of loss and damage under the policy. While admittedly the court there was only passing upon a fact question and not a law question, as we are faced with here, the court did state as follows: "Since the only proof of loss which the Company would have accepted would have to reflect only the amount the Company was willing to pay, which amount Mrs. Brodie was not willing to settle for, we think the court could find that she was justified in assuming that no other proof of loss was demanded or expected." For a similar situation where proper proofs of loss were prepared by an agent of the company which contained all the facts necessary to a determination of the question of the company's liability, which the insured refused to sign because the proofs also contained a release and where there were later offers of settlement, see Larkin v. Glens Falls Ins. Co., 80 Minn. 527, 83 N.W. 409. There the court stated:

"* * * The company possessed all information concerning the fire, and of facts necessary to make up the proofs of loss, and was in no way injured by a failure on the part of plaintiff to sign the proofs presented to him by its agent. The company having become possessed of all facts necessary to a determination of the question of its liability, and having expressly recognized its liability, its conduct was certainly such as to lead the insured to the belief that formal proofs would not be required, and amounted to a waiver thereof."

Finally, we come to the repeated offers of compromise after the expiration of the time limit for filing the proof of loss forms. This, together with the other factors mentioned, is a sufficient waiver. 32 Tex.Jur.2d 598. Again taking the undisputed facts as a whole, the acts of the appellant evidenced an intentional relinquishment of a known right, or at least intentional conduct that is inconsistent with claiming it so as to constitute the elements of a waiver. If we did not feel thus, we would at least remand the case for a further development of the facts and a submission of the issue to the jury so that the ends of justice would be better served, particularly in view of the time of filing the appellant's pleading, as was similarly done in Texas Farm Bureau Insurance Company v. Muse, 334 S.W.2d 193 (Tex.Civ.App., Waco 1960), and in Lincoln County Mut. Fire Ins. Co. v. Goolsby, 240 S.W.2d 402 (Tex.Civ.App.), Texarkana 1951).

The judgment of the trial court is affirmed.