**C. M. FISHER, Plaintiff-Appellant,**

v.

**INDIANA LUMBERMENS MUTUAL IN-
SURANCE COMPANY, Defendant-
Appellee.**

No. 71–2378

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 20, 1972.

Rehearing Denied April 19, 1972.

---

* Rule 18, 5 Cir.; See Isbell Enter-
prises. Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d
409.

Harry B. Friedman, Texarkana, Tex., for plaintiff-appellant.

·Larry L. Gollaher, Dallas, Tex., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Following a fire that totally destroyed his house and various items of personal property inside it, C. M. Fisher (Assured) sued Indiana Lumbermens Mutual Insurance Company (Insurer) for recovery of the loss under the terms of a Texas Standard Homeowners Policy[1] written by Insurer. At the close of the evidence the District Court granted Insurer's motion for a directed verdict on the issue of liability for loss of the house and submitted one special inter-

---

1. The relevant provisions of the Homeowners Broad Form endorsement to the policy are as follows:

"[T]he Company insures the Named Insured and legal representatives against loss * * * from any of the Perils Insured Against to the property hereafter described. Unless otherwise provided, this insurance shall apply only at the premises of the dwelling described on Page 1, and liability of the Company shall not exceed: the specified Limits of Liability; nor, the actual cash value of the property at the time of loss ascertained with proper deduction for depreciation; nor, the amount it would cost to repair or replace the property with material of like kind and quality, with proper deduction for depreciation, within a reason-able time after the loss without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair; nor shall it exceed the interest of the Insured.

PROPERTY INSURED
COVERAGE A—DWELLING, as described on Page 1 of this policy while occupied by the Insured principally for dwelling purposes.
COVERAGE B—UNSCHEDULED PERSONAL PROPERTY owned, worn, or used by the Insured, including members of his family of the same household and, at the option of the Insured, property of others * * * while on the premises of the described dwelling."

rogatory regarding the actual cash value of the personal property. The jury found that such property was valueless, judgment was entered for Insurer, and Assured appeals.

We affirm that portion of the judgment relating to the loss of the house, since the evidence conclusively establishes that on the date of the fire one of the policy conditions—Assured's occupancy of the house "principally for dwelling purposes"—was not met. However, we reverse on the issue of liability for loss of the personal property because despite timely objection by Assured the District Court improperly instructed the jury on the applicable standard of valuation under Texas law.

The record reveals that Assured's son purchased the policy in his father's name on August 15, 1970 from Insurer's local recording agent. The policy was mailed to Assured, and he made one partial payment on the premium before the insured property burned to the ground on September 2, 1970.

Prior to the fire the house was undergoing extensive alterations and repairs in preparation for its eventual occupancy by Assured. At the time of the fire Assured was actually living in another house several miles away, where he was attempting to farm and raise cattle, and by his own admission he merely intended to move into the new house following its renovation. He could not describe the floor plan and was uncertain whether he even possessed a key to the house. The testimony of the son was to the effect that the unfinished condition of the house was such that no one could have lived in it and that his father was only "figuring" to move in on the date of the fire.

Given these uncontroverted facts we are convinced that the Trial Court correctly concluded that there was no factual issue for the jury involving liability for loss of the house. "It is well settled in this Circuit that in diversity cases federal courts apply a federal rather than a state test for the sufficiency of the evidence to create a jury question." Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365, 368 (en banc). Under that standard it is not necessary that there be no evidence whatever supporting the position of the party adverse to the movant or that all factual issues be resolved conclusively in favor of the movant. It is enough "if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." 411 F.2d at 374. Phrased another way, at a bare minimum "there must be a conflict in *substantial evidence* to create a jury question." 411 F.2d at 375 (emphasis added).

Despite Assured's strenuous protestations to the contrary there is simply no such conflict here. As in McGowen v. Travelers Insurance Co., 5 Cir., 1971, 448 F.2d 1315, 1317, "all the evidence points one way"—at the time of the fire Assured was not occupying the house "principally for dwelling purposes" but was instead living several miles away while awaiting completion of the repairs. Under such circumstances Texas law clearly prescribes that by the explicit terms of the policy no liability for the loss ever arose. Bryan v. United States Fire Insurance Co., Tex.Civ.App., 1970, 456 S.W.2d 702, error ref. n. r. e.; Transcontinental Insurance Co. of New York v. Frazier, Tex.Civ.App., 1933, 60 S.W.2d 268; Home Insurance Co. v. Currie, 5 Cir., 1931, 54 F.2d 203; cf. British America Assurance Co. v. Miller, 1898, 91 Tex. 414, 44 S.W. 60; United States Fire Insurance Co. of New York v. Rothwell, Tex.Com.App., 1933, 60 S.W.2d 759.

The inevitability of this conclusion is not impaired by Assured's argument that the Trial Court erroneously denied a motion to amend the complaint in order to conform to alleged evidence of waiver and estoppel, the theory being that Insurer's local agent impliedly waived the policy's occupancy requirement because he knew the house was in such a state of disrepair as to render it

uninhabitable. Aside from the fact that the motion to amend was made and denied after the Trial Court had already granted Insurer's motion for a directed verdict, thereby negating any implication that the denial constituted an abuse of discretion,[2] an amendment of the pleadings would have been an exercise in futility in any event because there was no proof that under Texas law Insurer waived or was estopped from asserting the policy condition because of the actions of its agent.

Of course Assured is correct in his contention that "it is now well settled in Texas that a provision in an insurance policy that no condition or stipulation shall be waived except by a written indorsement attached to the policy is ineffectual to prevent a parol waiver of such provisions and conditions by an authorized agent acting within the scope of his authority." Home Insurance Co. of New York v. Roberts, 1937, 129 Tex. 178, 100 S.W.2d 91, 93; see also Aetna Insurance Co. v. Paddock, 5 Cir., 1962, 301 F.2d 807; South Falls Corp. v. Kalkstein, 5 Cir., 1965, 349 F.2d 378. Likewise there is no dispute that in Texas an insurer through its authorized agent may not "deliver a policy with full knowledge of facts upon which its validity may be disputed, and then * * * insist upon these facts as ground for avoidance [of liability]." Mecca Fire Insurance Co. v. Smith, Tex.Civ.App., 1911, 135 S.W. 688, 689. Nor is there any doubt that the positive misrepresentations of an agent regarding a policy's terms, conditions or coverage may subsequently estop an insurer from reliance upon policy provisions contary to such parol representations. New Hampshire Fire Insurance Co. v. Plainsman Elevators, Inc., Tex.Civ.App.,

1963, 371 S.W.2d 69, error ref. n. r. e.; State Farm Fire & Casualty Co. v. Ward, Tex.Civ.App., 1963, 364 S.W.2d 771, Tex.Inc.Code art. 21.14, V.A.T.S.; Western Millers Mutual Insurance Co. v. Williams, 5 Cir., 1956, 231 F.2d 425.

However, none of these decisions support the proposition asserted by Assured—that Insurer waived or was estopped to assert a condition of coverage merely because the agent might have known when the policy was written that the condition did not then exist. Such knowledge, without more, is insufficient in Texas to dictate the judicial nullification of the contractual agreement between Insurer and Assured. Maryland Casualty Co. v. Palestine Fashions, Inc., Tex.S.Ct., 1966, 402 S.W.2d 883; Ford v. Culbertson, 1958, 158 Tex. 124, 308 S.W.2d 855; Hallmark v. United Fidelity Life Insurance Co., 1956, 155 Tex. 291, 286 S.W.2d 133; Southland Life Insurance Co. v. Vela, 1949, 147 Tex. 478, 217 S.W.2d 660. The policy provided in plain and unambiguous terms that coverage would be afforded only if the house were occupied by Insured "principally for dwelling purposes" on the date of the loss. Even if the agent knew when he sold the policy that the house was not and could not then be occupied, he was under no affirmative obligation to refuse to insure it until Assured had moved in or to offer gratuitous predictions regarding the possible consequences of a loss transpiring before that time.

For essentially identical reasons we reject Assured's assertion that he was entitled to have his case heard by a jury on a theory of "constructive occupancy." Coverage was explicitly conditioned upon occupancy, not possession or ownership, and in view of the

---

2. Unlike the present case, all of the decisions upon which Assured relies involve the Trial Court's refusal "to grant the leave [to amend pleadings] without any justifying reason." Foman v. Davis, 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226; Farkas v. Texas Instruments, Inc., 1 Cir., 1970, 429 F.2d 849, cert. denied, 1971, 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324; Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 2 Cir., 1968, 392 F.2d 380; NLRB v. Merrill, 10 Cir., 1968, 388 F.2d 514. Here, however, the Trial Court refused to entertain the motion because it was obviously untimely (Tr. 265).

overwhelming evidence that the house was unoccupied when it burned down Assured was not entitled to have the issue of liability submitted to the jury merely on the off-chance that he might fortuitously prevail as the result of a wholly irrational verdict. Jenkins v. Aquatic Contractors & Engineers, 5 Cir., 1971, 446 F.2d 520; Bruce Construction Corp. v. United States, 5 Cir., 1957, 243 F.2d 873.[3]

 With respect to the propriety of the Trial Court's charge to the jury regarding the measure of damages recoverable by the plaintiff for the loss of the personal property, we have concluded that the standard enunciated was clearly inconsistent with Texas law. "It has long been the rule generally in [Texas] that to compensate for the loss of used household furniture and personal effects the measure of damages is the value of such goods to the owner, that is, the actual loss in money he has sustained by being deprived of articles which are especially adapted to the use of the individual and his family." Crisp v. Security National Insurance Co., Tex. S.Ct., 1963, 369 S.W.2d 326, 329. Since the Trial Court's instructions here were framed in terms of "actual cash value" (i. e. fair market value, the standard established by the policy language limiting liability), the standard of valuation that governed the jury's verdict was incorrect as a matter of law, necessitating reversal for the jury's reconsideration of the issue under correct instructions.

We cannot assume that the error was harmless because the jury found that the property had no value. Obviously the jury might reasonably have concluded that the property was "valueless" according to the standard given them because no cash could have been realized from a sale immediately preceding the fire in the absence of an established market for used furniture, appliances

and similar personal items. But that finding is not necessarily inconsistent with Assured's estimate of the value of the property to himself—approximately twelve hundred to fifteen hundred dollars. Any attempt on our part to second-guess the jury here would be particularly hazardous in light of the fact, explicitly recognized in *Crisp*, that "proof of values of this kind of property is difficult and somewhat speculative." 369 S.W.2d at 330. In such circumstances there is no basis for an inference that a finding based upon an incorrect evaluative standard would necessarily exclude the possibility of a different finding based upon the proper standard. Rather than resorting to speculative solutions, we consign the problem to another jury, properly instructed.

 Insurer suggests that Assured's failure to submit a proposed alternative instruction on the issue precludes its being raised now as error on appeal. Of course the failure of a party to submit a specific instruction in writing to the Trial Court bars any subsequent appellate complaint that the requested instruction was not given. Dallas Railway & Terminal Co. v. Sullivan, 5 Cir., 1940, 108 F.2d 581, 584; Indemnity Insurance Co. of North America v. Moses, 5 Cir., 1929, 36 F.2d 219, 220. "In the absence of a timely [written] request for detailed instructions, counsel must rest content with an *accurate* general statement of the basic principles of law applicable to the case." Turner Construction Co. v. Houlihan, 1 Cir. 1957, 240 F.2d 435, 439 (emphasis added). But this was not simply an instance in which the Trial Court's instructions were vague, ambiguous, inconsistent, or likely to mislead the jury. Jackson v. King, 5 Cir., 1955, 223 F.2d 714. Rather, they were flatly incorrect as a matter of Texas jurisprudence, since the jury was told that the plaintiff

3. Assured also relies heavily upon Article 6.13 and 21.16 of the Texas Insurance Code. Neither of these statutory provisions dictates a judicial rewriting of an insurance policy in order to afford loss coverage where none exists by the terms of the agreement. Bryan v. United States Fire Insurance Co., *supra*; Great American Insurance Co. v. Lang, Tex.Civ.App., 1967, 416 S.W.2d 541, error ref. n. r. e.

might recover only the actual cash value of the personal property destroyed by the fire. Assured would have waived the error by failing to enter a timely objection to the charge as required by F.R.Civ.P. 51. Swann v. Huttig Sash & Door Co., 5 Cir., 1970, 436 F.2d 60, 62; Mayeaux v. American Mutual Liability Insurance Co., 5 Cir., 1969, 409 F.2d 508, 510. Instead he preserved the point by objecting to the instruction before the jury retired, stating distinctly the matter to which he objected and the grounds for his objection (Tr. 283). That is all that Rule 51 requires.

The District Court's judgment for Insurer with respect to liability for loss of the house is affirmed. That portion of the judgment relating to liability for loss of the personal property is reversed and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.