Ben ROGERS, Plaintiff-Appellee,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant-Third Party Plaintiff, Appellant,

v.

Milton BELL and Mansard Homes Co., Inc., Third Party Defendants-Appellees.

No. 77–1420.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1979.

Osborne J. Dykes, III, Russell H. McManis, Fulbright & Jaworski, Houston, Tex., for defendant-third party plaintiff, appellant.

Robert Q. Keith, Beaumont, Tex., for Rogers.

James L. Weber, Gilbert I. Low, Beaumont, Tex., for Mansard Homes Co., Inc.

Brack Jones, Jr., Beaumont, Tex., for Bell.

Before COLEMAN, GODBOLD and IN-GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal arises out of a dispute over the language in the dwelling extension clause of a Texas standard homeowners policy.[1] The jury, upon special interrogatories, found against the insurer Aetna Casualty & Surety Company (Aetna) on all points, whereupon the trial court entered judgment on the verdict in favor of the insured Ben Rogers, plaintiff. From the denial of its motion for directed verdict and judgment notwithstanding the verdict, the insurer perfected its appeal to this court. For the reasons set out below, we affirm the judgment of the district court with modifications.

In 1973 the insured, Ben Rogers, contracted with third-party defendant Mansard Homes, Inc. (Mansard) to construct a poolhouse adjacent to the swimming pool in his back yard. At the time of construction of the poolhouse there was a gas-fired pool heater in place on a concrete slab near the pool. The plans for the poolhouse had been obtained from third-party defendant Milton Bell and provided for the poolhouse to be built around and without modification to the existing heater. Construction of the poolhouse took place during 1973 and the structure was virtually completed before the end of that year. Then, on December 11, 1973, a fire broke out in the poolhouse and nearly destroyed it.

After the smoke had cleared, Rogers promptly notified Aetna of the loss[2] and subsequently filed a claim with Aetna for the damages under his Texas standard homeowners policy. Rogers contended that a portion of the loss was covered under the dwelling extension clause of the policy and Aetna, therefore, was liable for $20,000.[3]

---

1. "Coverage A—Dwelling as described on Page 1 of this policy, while occupied by the Insured principally for dwelling purposes . . . . . Dwelling Extension—the Insured may apply up to 10% in the aggregate of the Limit of Liability applicable to the described dwelling as additional insurance to cover other private structures on the premises *used in connection with the occupancy of the dwelling* and not in contact therewith." (Emphasis added.)

2. Notwithstanding the fact that Rogers originally told Aetna on the morning after the fire that he did not intend to make a claim against Aetna, it is undisputed that Aetna was aware of the loss on the morning after the fire.

3. The policy had been originally issued in the amount of $200,000; therefore under the 10% limit of the extension clause, the maximum amount for which the appellant could be held liable was $20,000.

Part of Rogers' loss on the poolhouse ($25,000) was paid for by a builder's risk policy which apparently was in effect at the time of the fire. There is no evidence in the record as to why this amount was paid other than the fact that it was paid to the contractor to whom the policy had been issued; the contractor, Mansard Homes, subsequently paid the amount to Rogers. At oral argument, Aetna argued that since the builder's risk policy was still in effect at the time of the fire, that coverage could not have commenced under the dwelling extension clause. However, we note that the builder's risk policy is not in evidence and it has not been clearly established why the builder's risk policy was paid. Our opinion, therefore, does not reach the issue of whether a dwelling extension clause can commence coverage at a time when the builder's risk policy covering the structure during construction is still in effect.

Aetna refused to pay the claim, asserting that the poolhouse was not within the dwelling extension clause coverage. The parties were unable to resolve their differences. The present action was therefore instituted by Rogers against Aetna for the amounts that Rogers claimed were due on the policy. Aetna answered, denying liability, and thereafter filed a third-party action against the architect Milton Bell and the contractor Mansard based on negligence and breach of a contractor's warranty of workmanlike performance, alleging that it was subrogated to any rights the plaintiff Ben Rogers may have had against the third-party defendants.

Rogers subsequently amended his claim against Aetna to include $2,500 for some unscheduled personal property also destroyed in the fire. Trial was had to a jury and the case was submitted upon special interrogatories. The jury found for the plaintiff Ben Rogers in his claim against Aetna and against Aetna on its third-party claims against Mansard and Bell. The damage to Rogers' poolhouse having been found by the jury to be $52,784.51, the trial court entered judgment in favor of Rogers and against Aetna for $22,500 plus interest, representing the full amount claimed by Rogers. The trial court also entered judgment in favor of both third-party defendants against Aetna on Aetna's third-party claim. Aetna urges reversal based on the trial court's failure to grant its motion for directed verdict and judgment notwithstanding the verdict. Aetna makes numerous assignments of error, and each one will be dealt with below.

■ Federal jurisdiction in the original action exists by virtue of diversity of citizenship of the parties and the sufficiency of the amount in controversy. 28 U.S.C. § 1332. Although Aetna has raised some question relating to the trial court's assertion of subject matter jurisdiction over the third-party action, its claim is groundless. *Fawvor v. Texaco, Inc.*, 546 F.2d 636 (5th Cir. 1977), is inapposite[4] and the issue merits no further discussion.

Jurisdiction having been properly established, we note that since no federal question is presented, we are bound under *Erie* principles to apply state substantive law. The parties agree that Texas law controls in this action.

Aetna's principal contention on appeal is that the poolhouse was not covered under the dwelling extension clause because it was not in use at the time of the fire as required under the policy. In support of its contention, Aetna relies on *Fisher v. Indiana Lumbermen's Mutual Ins. Co.*, 456 F.2d 1396 (5th Cir. 1972). In that case, the insured sought recovery under a fire policy similar to the one at issue here. The fire had damaged the insured's *principal dwelling* at a time when he was living elsewhere. The court, applying Texas law, denied recovery since insured "was not occupying the house 'principally for dwelling purposes.'" *Id.* at 1398. Moreover, the dwelling extension clause was not in issue.[5] That, we believe, is the critical difference.

4. Jurisdiction of the claims asserted by Aetna against the third-party defendants Mansard Homes and Milton Bell exists by virtue of the doctrine of ancillary jurisdiction. In substance, that doctrine recognizes the power of a federal court, once proper subject matter jurisdiction of the main claim has been established, to adjudicate as incident thereto a related claim based wholly upon state law asserted by the defendant against a non-diverse impleaded third-party defendant. *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3523 (Supp.1978).

*Fawvor v. Texaco, Inc.* involved a case where the *plaintiff* had attempted to assert a claim directly against the non-diverse impleaded third-party defendant. The situation is not presented here and the case provides no support for Aetna's contentions.

5. Aetna also relies on *Zurich Ins. Co. v. Bass*, 443 S.W.2d 371 (Tex.Civ.App.—Dallas, 1969, no writ), and *Bryan v. United States Fire Ins. Co.*, 546 S.W.2d 702 (Tex.Civ.App.—Corpus Christi, 1970, writ ref'd n. r. e.). In *Bass*, the damaged outbuilding for which recovery under the policy was sought was leased to a different party, and thus was clearly not used in connection with the principal dwelling, as intended under the policy. Similarly, in *Bryan*, the insured had rented the principal dwelling to a third party. The *Bryan* court noted that the

844

■ In the present case, neither party has contended that the poolhouse was not the type of structure intended to be covered by the dwelling extension clause. The issue then is whether the structure had reached a sufficient stage of completion so as to be included within the coverage of that provision. It is difficult to lay down a hard and fast rule of law as to when that coverage commences on a newly constructed improvement. However, we hold that the test for commencement of coverage under the dwelling extension clause is when the structure has reached a sufficient stage of completion so as to be capable of use for the purposes for which it was constructed.

■ There was undisputed evidence that the poolhouse was ninety-nine per cent finished. Swimming gear was stored therein, appliances were connected, and the pool heater was in operation. The finishing touches, such as a few plumbing hook-ups and installation of some larger pieces of furniture, were all that remained. Accordingly, under the facts of this case, we find that the poolhouse had reached the stage of completion necessary to satisfy the foregoing test for commencement of coverage. Thus, the loss on the poolhouse occasioned by the fire was within the policy coverage.

■ Aetna next contends that Rogers did not comply with the policy provision requiring the filing of proof of loss. It is undisputed that compliance therewith is a condition precedent to coverage under the policy. *See, e.g., Hanover Ins. Co. v. Hagler,* 532 S.W.2d 136, 137 (Tex.Civ.App.—Dallas, 1975, writ ref'd n. r. e.). Texas law clearly states that substantial compliance with policy provisions requiring proof of loss is all that the insurer may require. *Texas Farm Bureau Underwriters v. Hasting,* 449 S.W.2d 283, 285 (Tex.Civ.App.—El Paso, 1969, no writ); *Austin Bldg. Co. v. National Union Fire Ins. Co.,* 403 S.W.2d 499, 506 (Tex.Civ.App.—Dallas, 1966, writ ref'd n. r. e.). *See Anchor Casualty Co. v. Bowers,* 385 S.W.2d 568, 569 (Tex.Civ.App.—Houston, 1964), *rev'd on other grounds,* 393 S.W.2d 168 (Tex.1965).

■ It is Aetna's contention that there was insufficient evidence to sustain the finding of compliance by plaintiff. In reviewing the sufficiency of the evidence we are obligated to consider the evidence with all reasonable inferences in the light most favorable to the non-moving party. *Pearce v. Wichita Cty., City of Wichita Falls, Etc.,* 590 F.2d 128, 132–33 (5th Cir. 1979). A verdict may be directed or a jury verdict overturned only " '[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable men could not arrive at a contrary verdict.' " *Id.* at 133 (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969)). There was sufficient evidence to sustain the jury's finding. The loss was reported the day after the fire. Aetna's agent investigated the scene of the fire on at least two different occasions. Within a two-month period after the fire Aetna received five letters from Rogers detailing all information about the claim as it became available. Aetna's contention regarding the sufficiency of the evidence is without merit. Moreover, Aetna did not object to the proof of loss at any time during its negotiations with Rogers. "The rule is that, when defective proofs of loss are furnished the company, it must, within a reasonable time, object to the proofs, and point out the defects, so that the assured may, if he so desires, amend the same, and cure the defects." *Anchor Casualty Co. v. Bowers, supra,* at 569–70.

■ Aetna submits that the evidence established negligence as a matter of law on the part of the third-party defendant Mansard and, therefore, the trial court erred in failing to direct a verdict or enter judgment notwithstanding the verdict in the third-party action against Mansard Homes. The standard of review in this court is as enunciated in *Boeing Co. v. Shipman, supra.* In this case, there was conflicting testimony given on virtually all aspects of the construction of the poolhouse, especially as to the distance between an interior wall and

policy had as a condition of coverage a requirement that the principal dwelling be occupied by the *insured.* Neither case is authority for Aetna's contention.

the pool heater itself. The credibility of the witnesses was for the jury to decide and we cannot say that the facts and inferences overwhelmingly favored Aetna such that "reasonable men could not arrive at a contrary verdict." *Id.* at 374.

Aetna's next point of error is that the trial court should not have entered judgment for an amount greater than that shown on the proof of loss. Aetna's reliance on *Commercial Union Assurance Co. v. Preston,* 115 Tex. 351, 282 S.W. 563 (1926), is misplaced, as the issue there was items not claimed on the proof of loss. Here, the issue is valuation of those claims. *See Tompkins v. Southern Lloyds Ins. Co.,* 515 S.W.2d 395, 396–97 (Tex.Civ.App.— Eastland, 1974, writ ref'd n. r. e.). "It is generally held that a proof of loss is not evidence of the extent of loss. We do not think that plaintiff was precluded from showing that his damages were greater than shown in the proof of loss . . . ." *Id.* at 397. Aetna's contention is without merit.

■ Error is also alleged by Aetna in the trial court's order to produce the notes of the appellant's claims supervisor. The rule is that a statement taken by a claims agent, as well as facts personally observed by him, are proper objects of discovery. *Southern Ry. Co. v. Lanham,* 403 F.2d 119, 131 (5th Cir. 1968), *rehearing en banc denied,* 408 F.2d 348 (1969). The trial court, upon plaintiff's request, ordered production of the *notes* made by Aetna's claims supervisor concerning facts observed by him in the investigation of the fire on December 12, 1973. After a noon recess, Aetna turned over to Rogers the requested notes, as well as Aetna's entire claims file regarding the fire. This was clearly more than Rogers had requested; moreover, Aetna should have objected. The trial court did not abuse its discretion in ordering the production of the notes. Likewise Aetna's concern about being required to make an objection to the order in the presence of the jury merits no discussion. *See Colonial Refrigerated Transportation, Inc., v. Mitchell,* 403 F.2d 541, 552 (5th Cir. 1968).

Aetna also submits that it was denied a fair trial by virtue of the trial court's comments throughout the proceeding. Upon reviewing the record, we are unable to agree. The comments made were not so prejudicial to Aetna as to deprive it of a fair trial. A curative instruction was given in order to dispel any possible notion the jury may have had regarding comments by the trial court.[6] The learned trial judge did not abuse his discretion in his control of the trial.

■ The jury found the value of certain items of unscheduled personal property to be $2,500. There is no evidence in the record to support a verdict for any amount greater than $2,100.[7] Aetna assigns error since there was insufficient evidence to support this finding. We agree. *See Pearce v. Wichita County, supra.* Clearly, the evidence was sufficient to support a jury verdict of $2,100 value on the unscheduled personal property.

■ Appellant's last assignment of error is in the trial court's computation of pre-judgment interest. "Where the insuror denies liability, and the assured establishes the insurer's liability, interest will begin from the date of the denial of liability." *Ft. Worth Lloyds v. Hale,* 405 S.W.2d 639, 643 (Tex.Civ.App.—Amarillo, 1966, writ

---

6. "You are not bound by any opinion which you think the Court may have about the facts in the case, for that is your exclusive province. In other words, the Court doesn't pass on the facts, the Court only passes upon the law and presides at the trial.

"You have the exclusive prerogative to determine the facts and the Court has no desire to trespass upon it. In connection with any statement or comment that the Court may have made during the course of this trial, if any of you or all of you were led to believe that the Court might have an opinion about the facts of the case, the lawyers involved, or feel a certain way about the credibility of the witness, you will please disregard this and dismiss it from your mind as any belief or let it affect your verdict in any way."

7. Rogers testified that he paid $2,100 to replace the appliances in question and no other evidence was adduced as to the value of these items of unscheduled personal property.

ref'd n. r. e.), *quoted in Liberty Mutual Ins. Co. v. General Ins. Corp.*, 517 S.W.2d 791, 798 (Tex.Civ.App.—Tyler, 1974, writ ref'd n. r. e.). Aetna contends that denial of liability occurred when it filed its original answer to Rogers' complaint. We disagree. There was sufficient evidence to establish that the denial of liability was on July 16, 1974, the date of the letter sent to Rogers by the claims representative of Aetna.[8] Aetna was aware of Rogers' claims and his demands for payment under the policy, and the letter from Aetna's representative effectively denied liability. Pre-judgment interest should be computed from that date. *See Ft. Worth Lloyds v. Hale, supra*, at 643.

Regarding the trial court's computation of interest, we agree with Aetna that the judgment should be modified to reflect the legal rate allowed by law. Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (1971), and art. 5069–1.05 (Supp.1978), provide that pre-judgment interest is to be computed at the rate of 6% per annum and post-judgment interest is to be computed at the rate of 9% per annum. Accordingly, the judgment should be modified to reflect those rates of interest.

In conclusion, we note that there was sufficient evidence in the record to sustain the findings of the jury on all points except the value of the unscheduled personal property. Thus, the district court did not err in refusing to grant Aetna's motion for a directed verdict and judgment notwithstanding the verdict. The judgment should therefore be modified to reflect an award of $2100 for the loss of the unscheduled personal property. Additionally, the interest awarded should be recomputed to reflect the rates set out above.

The judgment of the district court is affirmed and is remanded with instructions that the judgment be modified consistent with the foregoing comments.

AFFIRMED AS MODIFIED.

---

8. The letter in question was sent by Aetna's claim representative, Mr. Leon Clark, informing Rogers that: "We regret that we must respectfully decline your demand of $22,263.72, or the limit of your policy of $20,000. . . . We are sorry that we are unable to arrive at an agreement on this matter. . . . Our position in this matter is unchanged. . . . "