**J.B. SPATES and Sharon Spates, Appellants,**

v.

**REPUBLIC INSURANCE COMPANY, Appellee.**

**No. 04–87–00268–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 10, 1988.

Charles A. Schmidt, San Antonio, for appellants.

Charles A. Deacon, Brock & Kelfer, San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

This is an appeal from summary judgment denying fire insurance coverage to the appellants. Appellants, J.B. and Sharon Spates, bought a Texas Standard Homeowners Policy covering their home at 8826 Wilma Jean, San Antonio, Texas. Sometime in the summer of 1984, appellants began to construct a new home and moved out of the Wilma Jean residence. On September 19, 1984, the Wilma Jean house was destroyed by fire. Appellants made a claim under their insurance policy, but Republic Insurance Company, (appellee), refused to honor the claim on grounds that the house was not being used "principally for dwelling purposes" at the time of the fire. Appellants filed suit, and appellee moved for and was granted summary judgment.

Appellants in a single point of error allege that the trial court erred in granting summary judgment in favor of appellee because there existed factual issues as to (1) the intent of the parties to the insurance contract, (2) whether the house was ever vacated, and (3) the exact date of vacancy. Appellants rely on a provision in the policy stating that when the dwelling is deemed vacant all coverage will be suspended "effective 60 days after date" that the dwelling is deemed vacant.

In any summary judgment case, the burden is on the movant to show that there is no genuine material fact issue and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166–A(c). The nonmovant, appellants in this case, need show opposing evidence to the motion only after the movant has presented competent extrinsic evidence in support of the summary judgment. See Nutchey v. Three R's Trucking Co., Inc., 674 S.W.2d 928, 929 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

Appellee's summary judgment proof consisted of a copy of the insurance policy and the sworn statement of appellant, J.B. Spates. The homeowners policy provides, under the section captioned PROPERTY INSURED, as follows:

COVERAGE A—DWELLING, as described on Page 1 of this policy, while occupied by the insured principally for dwelling purposes.

Under the section captioned BASIC CONDITIONS, the policy specified:

VACANCY—If the Insured ceases to reside in the described dwelling and the unscheduled personal property or a substantial portion thereof is removed therefrom, the dwelling shall be deemed vacant and the coverage applicable to said dwelling as provided under Section 1 of this policy and all coverage under the Dwelling Extension shall be suspended effective 60 days after date of removal of such unscheduled personal property and remain suspended during such vacancy.

Appellee contends that Texas courts have considered the Texas Standard Homeowner's Policy and have found the controlling language to be "while occupied by the insured principally for dwelling purposes." See Fisher v. Indiana Lumbermens Mut. Ins. Co., 456 F.2d 1396, 1398 (5th Cir.1972); see also Doyle v. Member's Mut. Ins. Co., 679 S.W.2d 774 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Bryan v. United States Fire Ins. Co., 456 S.W.2d 702 (Tex. Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.).

We have reviewed the cases cited by appellee, and we find no reference in any of the cases to the 60–day grace period that appears in the instant policy. Specific provisions in a contract prevail over more general ones. *See Davis v. Texas Life Ins. Co.*, 426 S.W.2d 260 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). We have determined that the cases cited by appellee do not render void the 60–day vacancy provision in appellants' policy. Nor can we hold that this provision is without legal effect.

We hold that appellee's summary judgment proof must establish, as a matter of law, that the fire occurred after the expiration of 60 days following appellants' vacating of their Wilma Jean house, as provided in the basic conditions portion of the policy.

A review of the sworn statement of J.B. Spates reveals that several attempts were made to pin down the exact date that appellants moved out of the Wilma Jean house. The pertinent testimony of J.B. Spates is as follows:

\* \* \* \* \* \*

Q: Was it your house, your home? [the Wilma Jean house]

A: It was my home. The only thing I did, I let my brother-in-law live in it to repair it after we moved out.

\* \* \* \* \* \*

Q: Okay. Why were you fixing it up?

A: Resell.

Q: Okay.

A: I had moved out to the country.

Q: Okay. So you were fixing it up so that you could sell it?

A: Yes.

Q: You didn't have any intent living there anymore? You moved to the country?

A: Well, I was going to sell it, yes. I had intent to sell it.

\* \* \* \* \* \*

Q: Did you have any personal property involved in this loss or anything?
...

A: ... the curtains were all hung. We had bags of clothes there. We had shoes.

Q: I mean you had moved out, though? I'm saying the bulk of your personal belongings had been moved?

A: Most of it, yes.

Q: And what was—

A: Until I had—you know, until I did something with the house, I wasn't going to move everything.

Q: These weren't the clothes that you wore most of time?

A: No, they was more like winter clothes and stuff like that.

\* \* \* \* \* \*

Q: Okay. In your proof of loss, you state that it was an owner dwelling, that it was occupied at the time of loss by the owner.

A: Well, I am the owner.

Q: Okay. But you were not living in it?

A: I was not living in there. My brother-in-law was living in there. Well, he moved out about two or three days before that.

\* \* \* \* \* \*

Q: So the dwelling was unoccupied [when] the fire occurred?

A: Well, I don't know....

\* \* \* \* \* \*

Q: And he [the brother-in-law] moved out several days before [the fire]?

A: I think six or seven days, something like that. Like I say, I'm not sure.

Q: How long had your brother-in-law been living there?

A: I guess a month and a half, two, three months, I don't know. Two or three months.

\* \* \* \* \* \*

Q: How long had it been since you lived in the house? When did you move out?

A: When he moved in.

Q: All right. So two or three months prior to the fire?

A: Right.

Q: Would that have been like June or July?

A:  Well, I have no idea, whatever the date was.  Yeah, I'd say somewhere in there.

\*    \*    \*    \*    \*    \*

In response to the motion for summary judgment, appellants offered the affidavits of J.B. Spates, Sharon Spates, and Lois Bridges, which stated in part that appellants were still in the process of moving their personal belongings to the new house in the month of August, specifically on the dates of August 11 and 20, 1984.

We find, and the undisputed evidence shows, that appellants were no longer living in the Wilma Jean house on the date of the fire.  However, there exists a fact question as to whether the fire occurred after the 60–day period following the vacating of the house.  Appellant, J.B. Spates, stated that he had moved out about a month-and-a-half to three months before the fire.  Appellee, as movant for summary judgment, has failed to establish as a matter of law that the fire occurred after sixty days following the vacating of the house.

There being a fact question as to the exact day that appellants vacated the house, the trial court erred in holding as a matter of law that the house was not covered by the insurance policy.  We sustain appellants' point of error and reverse the cause for trial on the merits.

BUTTS, J., dissents without opinion.