Jack HUFFSTUTTER, et al.,
Plaintiffs–Respondents,

v.

MICHIGAN MUTUAL INSURANCE COMPANY, Defendant–Appellant.

Nos. 55539, 55713.

Missouri Court of Appeals,
Eastern District
Division Two.

Aug. 1, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Casey & Meyerkord, P.C., Stephen F. Meyerkord and John A. Lally, St. Louis, for defendant-appellant.

Brown, James, & Rabbitt, P.C., Lawrence B. Grebel and Charles E. Reis, IV, St. Louis, for plaintiffs-respondents.

KAROHL, Judge.

This appeal involves a judgment in favor of Jack Huffstutter and Marilyn Jacko f/k/a Marilyn Huffstutter (Huffstutters) on their claim for insurance benefits on a fire loss of real and personal property. The trial court found: (1) Michigan Mutual Insurance Company issued a homeowners policy on the "building known as a clubhouse"; (2) there was coverage under the policy for the loss; and (3) Huffstutters were entitled to payment for the policy limits where the loss exceeded the limits, but not living expenses. The trial court

denied Huffstutters request for prejudgment interest pursuant to § 408.020 RSMo 1978 and damages for vexatious refusal to pay pursuant to § 375.420 RSMo 1978. Both parties appeal from the judgment.

Michigan Mutual Insurance Company (Michigan Mutual) appeals claiming the court erred in finding coverage existed because Huffstutters did not occupy the dwelling principally as a private residence. Huffstutters appeal claiming the court erred by failing to award prejudgment interest as provided in § 408.020 on their claim from the date the damages became liquidated. We affirm the finding of coverage under the policy and reverse and remand for a determination and award of interest.

The following provisions of the insurance policy are relevant to the issues on appeal.

### COVERAGE A—DWELLING

This policy covers the described dwelling building ... occupied principally as a private residence.

\*   \*   \*   \*   \*   \*

### COVERAGE C—UNSCHEDULED PERSONAL PROPERTY

This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an Insured, while on the described premises ... occupied exclusively by the Insured.

\*   \*   \*   \*   \*   \*

When loss payable.

The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss ... is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

The record discloses evidence of the following facts. Huffstutters purchased a policy of homeowners insurance from Michigan Mutual Insurance Company through an independent broker, C.A. Vegley. The policy was purchased to insure Huffstutters' building located at 5831 Keller Road.

The building was a one story, frame building with artificial stone siding owned by Huffstutters. Huffstutters lived on Chippewa at the time they purchased the policy. However, they listed their mailing address as 5831 Keller Road. Shortly thereafter, Huffstutters rented and moved into a two-family, two-story farmhouse located 300 yards from the clubhouse. The Huffstutters, as renters, had no insurable interest in the rented farmhouse. The address of the farmhouse was also 5831 Keller Road.

According to the terms of the policy, coverage existed for the premises located at 5831 Keller Road and described as a single-family, frame dwelling and unscheduled personal property contained therein. On April 4, 1974, Huffstutters sustained hail damage to the dwelling. Shingles had blown off the roof and two windows were cracked. The hail did not damage the farmhouse. Huffstutters submitted a proof of loss under the subject policy. They received payment on their claim. Michigan Mutual's claim adjuster, Jack Sartorius, testified he visited the farmhouse, not the clubhouse, when he processed the hail claim at 5831 Keller Road. There was no evidence this was the result of any act of Huffstutters. As a result of the hail claim, Michigan Mutual determined the dwelling had a higher value than it was insured for and initiated an increase in coverage from $15,000 to $25,000 on the clubhouse and $7,500 to $12,500 on the unscheduled personal property.

On May 5, 1975, the clubhouse was destroyed by fire. Michigan Mutual admitted in its answer "the value of the house destroyed by the fire of May 5, 1975 was, on that date, $25,000, and the value of contents ... $12,500." Huffstutters notified Michigan Mutual of the loss on May 9, 1975. On October 9, 1975, Huffstutters submitted a proof of loss and requested payment from Michigan Mutual for the clubhouse, unscheduled personal property and living expenses. On February 18, 1976, Michigan Mutual, by letter, denied Huffstutters claim. It gave two reasons for denying the claim. It informed the Huffstutters that the stated description of

property at 5831 Keller Road did not describe the location of the clubhouse and the policy did not provide coverage for a secondary residence. However, Michigan Mutual offered Huffstutters $1,000 for loss of their unscheduled personal property away from the insured premises. The policy provided for such loss.

Thereafter, Huffstutters filed suit against Michigan Mutual. The first lawsuit was dismissed without prejudice. Huffstutters refiled to recover their loss for real property, personal property, and for living expenses, prejudgment interest and damages for vexatious penalties. By answer, Michigan Mutual admitted it issued the policy covering property at 5831 Keller Road and "it paid a claim for hail damage to said property at 5831 Keller Road." By way of affirmative defense it alleged:

(4) ... plaintiffs failed to comply with the terms and conditions of said policy of insurance.

\* \* \* \* \* \*

(6) ... the insured property was located at 5831 Keller Road and said property was not damaged or destroyed by fire and that plaintiffs sought to recover under said policy of insurance for property that was not covered or insured by defendant Michigan Mutual Insurance Company.

The trial court made findings of fact and conclusions of law and entered a judgment in favor of Huffstutters for the policy limits on the real and personal property [it was undisputed the loss exceeded the limits] but denied prejudgment interest and damages for statutory vexatious penalties. Both parties appeal.

■ Michigan Mutual's claim of error is the court erred in finding coverage existed under the policy for the clubhouse and personal property because the evidence included admissions that the Huffstutters did not occupy the destroyed house as a principal residence. Michigan Mutual interprets the Coverage A Provisions to require that the insured occupy the insured premises as their principal residence as a requirement for coverage. Huffstutters' response is

that the insured premises must be principally used as a dwelling, when used, and coverage is not limited to a principal residence of the named insured. The trial court agreed with the Huffstutters' interpretation.

In this court-tried case we review under the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or unless it erroneously declared or applied the law. Interpretation of an insurance policy is a question of law. *Moore v. Commercial Union Insurance Company*, 754 S.W.2d 16, 18 (Mo.App. 1988). Insurance policies are contracts, and thus contract construction rules are applicable to insurance policies. *Id.*

The parties disagree over the meaning of this insuring provision: "[t]his policy covers the described dwelling building ... occupied principally as a private residence." In its brief, Michigan Mutual contends the language "occupied principally as a private residence" means Huffstutters were required to occupy the clubhouse as their primary residence and place of dwelling as a condition to coverage under the policy. Michigan Mutual contends the court erred in finding coverage where the Huffstutters admittedly used the clubhouse as a secondary residence. It does not claim the clubhouse was ever used other than as a residence, nor is there any dispute both buildings had the same address. Huffstutters emphasize the word "principally" is an adverb which modifies and restricts the word "occupancy" and hence their use of the clubhouse. Huffstutters' interpretation of the language is that in order to maintain coverage they were required to use the clubhouse as a private residence, when used.

In support of its interpretation of the language in the above provision Michigan Mutual relied upon three Texas cases. *See, C.M. Fisher v. Indiana Lumbermens Mutual Insurance Company*, 456 F.2d 1396 (5th Cir.1972); *Bryan v. United States Fire Insurance Company*, 456 S.W.2d 702 (Tex.Ct.App.1970); *J.W. Doyle v. Members*

*Mutual Insurance Company*, 679 S.W.2d 774 (Tex.Ct.App.1984). In each of the above cases a dwelling was destroyed by fire. The operative insuring clause in these cases read: "COVERAGE A—DWELLING, as described on Page 1 of this policy, *while occupied by the Insured* principally for dwelling purposes." (Our emphasis). This language was interpreted by each court to mean that the insurance coverage was explicitly conditioned upon occupancy by the insured. The property was not insured when unoccupied by the insured. Possession and ownership of the insured property was insufficient to maintain coverage if the insured did not occupy the dwelling at the time of the fire.

Each case was appealed on the factual determination of whether the owner occupied the insured dwelling at the time of fire loss. In *Fisher*, the court held the insured was *not occupying* the house principally for dwelling purposes when the fire occurred but was instead living several miles away while the house was undergoing repairs in preparation for its eventual occupancy by insured. *Fisher*, 456 F.2d at 1398. In *Bryan*, the court held that insured, who was renting house at time of fire, was not insured when the insured was *not occupying* it as his own dwelling, as when he rented out the entire house. *Bryan*, 456 S.W.2d at 704–05. In *Doyle*, the court held insured, who had moved from Azle, Texas, to Maud, Texas, before the residence burned and had no intention of returning, was *not occupying* the residence principally for his dwelling purposes even though his son was living at the residence at the time of the fire. *Doyle*, 679 S.W.2d at 775–76.

Here the insuring clause has no requirement of occupancy by the insured. The present policy contains no exclusion clause for which "vacancy" would suspend coverage if the insured premises became vacant. Coverage is not explicitly conditioned upon occupancy and use by the insured as a primary dwelling. This policy is unlike the insuring clauses in *Fisher, Bryan* and *Doyle*. Michigan Mutual's reliance on these cases in support of their interpretation is misplaced. Michigan Mutual's interpretation of the provision would require reading the following words into the provision: "[t]his policy covers the described dwelling building (when occupied by insured) principally as (his primary place of) private residence." Courts may not rewrite a contract of insurance as Michigan Mutual's interpretation requires. *Protective Casualty Insurance Company v. Cook*, 734 S.W.2d 898, 905 (Mo.App.1987). Our duty is to interpret and enforce the contract as written. *Id.*

We find Coverage Clause A unambiguous. Where language of an insurance policy is unambiguous there is no room for construction and the words must be given their usual and plain meaning. *Luyties Pharmacal Co. v. Frederick Co., Inc.*, 716 S.W.2d 831, 835 (Mo.App.1986); *Vail v. Midland Life Ins. Co.*, 108 S.W.2d 147, 151 (Mo.App.1937). "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980). The Coverage Clause A, as written, does not require Huffstutters to maintain their principal place of residence at the clubhouse. It required the clubhouse use to be as a dwelling house. Accordingly, we find no error.

Huffstutters' claim of error on appeal is the court erred by failing to award prejudgment interest pursuant to § 408.020 RSMo 1969 and 1979. Huffstutters contend they are entitled to prejudgment interest at six percent from February 18, 1976, to October 1, 1979, and at nine percent after October 1, 1979.

Section 408.020 RSMo 1969 provided "[c]reditors shall be allowed to receive interest ... for all moneys after they become due and payable in written contracts...." The general rule is a policy holder is entitled to interest from the date the claim became payable under the policy. *Francka v. Fire Insurance Exchange*, 668 S.W.2d 189, 190–91 (Mo.App.1984). A claim becomes liquidated so as to bear interest when the amount due is fixed by

agreement between the parties. *Twin River Construction Co., Inc., v. Public Water District No. 6*, 653 S.W.2d 682, 695 (Mo. App.1983). Here the policy benefits were payable sixty days after the proof of loss was received. Huffstutters submitted a timely proof of loss on October 9, 1975. The amount of the loss was ascertainable at that time.

Michigan Mutual contends the evidence supports denial of prejudgment interest based upon equitable principles of fairness and justice. It cites *Catron v. Columbia Mutual Insurance Company*, 723 S.W.2d 5 (Mo. banc 1987) in support of its contention. In *Catron*, the court recognized equitable principles of fairness and justice may be considered when awarding prejudgment interest on an unliquidated demand. *Id.* at 7. *See, St. Louis Housing Authority v. Magafas*, 324 S.W.2d 697 (Mo. banc 1959) (Equitable solution was to allow interest on unliquidated demand where defendants were denied use of their property during the period before trial).

Here the demand is liquidated. Equitable principles of fairness and justice may not be considered when awarding prejudgment interest on a liquidated demand. An award of prejudgment interest in a case where § 408.020 is applicable is not a matter of court discretion; it is compelled. *St. Joseph Light & Power Company v. Zurich Insurance Company*, 698 F.2d 1351, 1355 (8th Cir.1983). The existence of a bona fide dispute as to the amount owed does not preclude recovery of interest. *Twin River Construction*, 653 S.W.2d at 695. The court must consider the character of the claim, not the defense to it, when determining whether the claim is liquidated. *Id.* Huffstutters' claim was a contractual claim for an ascertainable amount which was governed by § 408.020. Therefore, Huffstutters are entitled to prejudgment interest at the legal rate of interest on their claim from the date it became liquidated as provided in the insurance policy. *See, Grantham v. Shelter Mutual Insurance Co.*, 721 S.W.2d 242, 245 (Mo.App.1986).

Section 408.020 provided, in pertinent part: "[c]reditors shall be allowed to receive interest at the rate of six [nine percent effective September 28, 1979] percent

per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts...." Section 408.020 RSMo 1969.

We affirm judgment for Huffstutters. We remand for determination of prejudgment interest and amendment of judgment in accord with this opinion.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.