**GATEWAY WESTERN RAILWAY CO., Plaintiff–Appellant,**

v.

**MORRISON METALWELD PROCESS CORP., Defendant–Appellee.**

No. 94–1393.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Feb. 2, 1995.

Michael Gill, Chicago, IL (Anne K. Lewis, on the brief), for appellant.

John S. Rollins, Kansas City, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

In this diversity action, Gateway Western Railway Company ("Gateway") sued Morrison Metalweld Process Corp. ("Morrison") for breach of contract and negligence, alleging that Morrison's defective repair of Gateway's track derailed a Gateway train and seeking $268,700 in damages. Morrison denied liability and counterclaimed for payments due under the repair contract. A jury

awarded Gateway $26,870.55 on its claims and Morrison $15,564.00 on its counterclaim. Gateway appeals, arguing that the district court[1] erred in submitting the contract claim with a comparative fault instruction, in applying Missouri rather than Illinois law, and in awarding prejudgment interest on Morrison's counterclaim. We affirm all but the award of prejudgment interest.

## I.

Morrison is an Ohio welding company specializing in railroad track repairs. On March 26, 1990, Morrison repaired the welds on a "spring frog" on Gateway's track at Odessa, Missouri. Three days later, a Gateway train derailed at that location. Gateway directed Morrison to stop other work under the repair contract, withheld payment for work already done, and sued Morrison for all damages resulting from the derailment. At trial, Gateway's evidence tended to prove that Morrison's failure to smooth out bumps on its welds was a direct cause of the derailment. Morrison's evidence tended to prove that its welds were not defective, that there were significant other defects in the track at that location, that Morrison workers timely advised Gateway of those other defects, and that other Gateway trains had traveled over the spring frog after Morrison's repairs without derailing. Morrison also presented proof that it had not been paid $15,654 due for completed repairs under the contract.

At the close of the evidence, Gateway was permitted to submit both its contract and negligence claims over Morrison's objection that Gateway had to choose one or the other. For the contract claim, Gateway requested a damage instruction based upon Missouri Approved Instruction ("M.A.I.") 4.01—"you must award Gateway such sum as you believe will fairly and justly compensate Gateway for any damages you believe it sustained as a direct result of the [breach of contract]." However, agreeing with Morrison, the district court instead submitted Gateway's negligence and contract claims under identical comparative fault instructions. The jury

1. The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge of the United States District Court for the Western District of Missouri.

then returned a special verdict in favor of Morrison on its counterclaim and the following special verdict on Gateway's claims:

> On Gateway's claims for damages on either their breach of contract claim, as referred to in Instruction No. 9, or their negligence claim, as referred to in Instruction No. 13, we assess percentages of fault as follows:
>
> | | | |
> |---|---|---|
> | Defendant Morrison | 10% | (zero to 100%) |
> | Plaintiff Gateway | 90% | (zero to 100%) |
> | TOTAL: | 100% | (zero OR 100%) |
>
> (NOTE: The court will compute the appropriate amount of damages consistent with these findings....)

The district court denied Gateway's post-trial motions, decided that Morrison is entitled to prejudgment interest on its counterclaim, and entered judgment in favor of Gateway for 10% of its total claim of $268,705.47, or $26,870.55, and in favor of Morrison for $15,654 plus $4,618.39 in prejudgment interest, or $20,272.39. Gateway appeals.

## II.

The principal issue on appeal is whether the district court improperly limited Gateway's breach of contract damages by a comparative fault instruction. Missouri law is unclear on this issue. Some cases have flatly stated that a plaintiff's comparative fault is not a basis for apportioning contract damages. See Crank v. Firestone Tire and Rubber Co., 692 S.W.2d 397, 401 (Mo.App.1985); FDIC v. G. III Investments, Ltd., 761 S.W.2d 201, 203 n. 3 (Mo.App.1988). But other Missouri cases have approved the use of comparative fault principles in contract cases, at least when mitigation of damages is at issue. See American Mort. Inv. Co. v. Hardin-Stockton Corp., 671 S.W.2d 283, 291 (Mo.App.1984), upon which the district court relied; Business Men's Assurance Co. v. Graham, 891 S.W.2d 438 (Mo.App.1994). See also Ralston Purina v. Home Ins. Co., 760 F.2d 897, 901 (8th Cir.1985) (construing American Mortgage ).

We are uncertain how the Missouri Supreme Court would reconcile these conflicting pronouncements of its intermediate appellate courts. Section 1(b) of the Uniform Comparative Fault Act, 12 U.L.A. 44 (Supp. 1994), recommends extending comparative fault principles to a contract plaintiff's "failure to avoid an injury or to mitigate damages." But after broadly endorsing the uniform act in adopting comparative fault in negligence cases in Gustafson v. Benda, 661 S.W.2d 11, 15 (Mo. banc 1983), the Missouri Supreme Court declined to extend the uniform act's principles to Missouri products liability cases. See Lippard v. Houdaille Indus., Inc., 715 S.W.2d 491 (Mo. banc 1986). Though we are uncertain whether the Missouri Supreme Court would broadly extend comparative fault principles to issues of consequential contract damages, we conclude that that Court would uphold the district court's resolution of the specific jury instruction issue that it faced in this case.

Gateway's breach of contract claim sought more than the benefit of Gateway's bargain; it sought consequential damages for the property damage allegedly caused by Morrison's breach. Such damages may be recovered under Missouri law, but the doctrines of proximate cause and foreseeability limit a defendant's liability. M.A.I. 4.01, the damage instruction requested by Gateway for its contract claim, is improper in a consequential damages case:

> M.A.I. 4.01 is not the proper measure because it ... does not follow the law on the measure of consequential damages.... By allowing for recovery of damages directly resulting from the occurrence, M.A.I. 4.01 substantially follows the rule for damages naturally and proximately arising from the breach, but it does not provide for damages that were reasonably contemplated by the defendant at the time it warranted its work. The prejudice in this is obvious because even though plaintiff, at best, showed $4,759.45 in actual damages, he was awarded $7,000.... The case must be remanded for retrial on the issue of damages, and M.A.I. 4.01 should be modified to follow the law as explained in this opinion.

Crank, 692 S.W.2d at 402–03. Accord Anuhco, Inc. v. Westinghouse Credit Corp., 883

S.W.2d 910, 920–21 (Mo.App.1994); *Shurtz v. Jost*, 597 S.W.2d 652, 655 (Mo.App.1979). Thus, the district court correctly refused to give Gateway's requested instruction that erroneously stated Missouri law. *See Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 906 (8th Cir.1985).

■ However, Morrison did not request an instruction modifying M.A.I. 4.01 to provide that only foreseeable consequential damages may be recovered. Morrison first urged the district court to require that Gateway elect between its contract and negligence claims. That was not a frivolous contention. Because Gateway incurred only property damage, and because Gateway's negligence claim alleged only breach of a contractual duty, it is arguable, though by no means certain, that its action for negligence is faulty under Missouri law. *See State ex rel. Cummins Mo. Diesel Sales Corp. v. Eversole*, 332 S.W.2d 53, 58 (Mo.App.1960). But Morrison did not raise that issue. Instead, when the district court "reluctantly" ruled that it would submit both Gateway claims, Morrison argued that the comparative fault instruction, which was clearly appropriate for the negligence claim, should be given for the contract claim as well because apportionment of fault is proper and this would avoid confusing the jury.

The district court adopted this approach. It noted that *American Mortgage* is direct support for Morrison's position, whereas the contrary statements in cases cited by Gateway were dicta. It further noted that in this case the "consideration of collateral cause" that is relevant to determining contract damages is similar, from the jury's perspective, to the application of comparative fault principles to determine negligence damages. Finally, the court noted that Gateway's contention that Morrison is liable for all consequential damages of derailment even if the accident was primarily caused by Gateway's "rotten roadbed" is fundamentally unfair.

On the facts of this case, we agree. The dilemma facing the district court was largely of Gateway's own making. If Gateway had dropped its questionable negligence claim and proposed a contract damage instruction consistent with Missouri law, we have no doubt that the district court would have given that instruction. Instead, Gateway stuck to its untenable legal position. The district court gave an instruction that has support in Missouri law, is consistent with the trial evidence, and presented each party's essential position to the jury in a simple, understandable manner. As the Third Circuit said in affirming the proration of contract damages in *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 527–28 (3d Cir.1978), "[t]he action of the trial judge in dividing the loss between the parties was a fair solution to a difficult problem and is not reversible in the circumstances here." Likewise, the district court in this case fashioned an instruction that encouraged the jury to find "a fair solution to a difficult problem." Missouri law is not to the contrary.

## III.

■ Gateway next argues that Illinois law governs its contract claim and does not allow comparative fault to reduce contract damages. In diversity cases, federal courts apply the choice of law rules of the forum state. *See Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir.1990).

■ As we noted in *Birnstill*, for a breach of contract claim when the contract does not contain a choice-of-law provision, Missouri uses the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws. *See National Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo. App.1979). Section 188(2) of the Restatement directs the court to consider the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the place of incorporation and place of business of corporate parties. What matters is not a mechanical tally of these factors, but an analysis of their relative importance to the particular claim under consideration.

■ In this case, the district court noted that Gateway is headquartered in Illinois, where the contract was negotiated and entered into. However, the court concluded, Missouri has the most significant relationship to Gateway's claim of improper performance

by Morrison because a large majority of the sites to be repaired were in Missouri, and the parties "should have expected the Missouri law would govern any disputes arising over repairs made within Missouri's borders." We agree. The adequacy of Morrison's performance was the central issue in Gateway's claims, and performance was centered in Missouri. Furthermore, Missouri has strong public safety interests in the manner in which local railroad tracks are maintained and repaired. We have little doubt that the Missouri courts would apply Missouri law in resolving Gateway's contract as well as its negligence claim. *See* Restatement §§ 188 cmt. e, 196.

### IV.

■ Finally, Gateway challenges the award of prejudgment interest. Following the favorable verdict on its counterclaim, Morrison moved for an award of prejudgment interest under R.S.Mo. § 408.020:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made. . . .

Without citing any authority, Gateway opposed this motion on the ground that its damage recovery is greater than Morrison's recovery on the counterclaim. The district court concluded that Morrison's counterclaim is within the plain meaning of the statute and awarded prejudgment interest.

On appeal, Gateway argues for the first time that the award of prejudgment interest is contrary to *Herbert & Brooner Constr. Co. v. Golden,* 499 S.W.2d 541, 553 (Mo.App. 1973). We agree. That case held that, in computing prejudgment interest, a judgment for amounts due under a contract must be reduced by the other party's offsetting recovery under a counterclaim for breach of the same contract, including any recovery of consequential or special damages. *Herbert & Brooner* is consistent with the earlier decision in *Burger v. Wood,* 446 S.W.2d 436, 445 (Mo.App.1969). In our view, these decisions would probably be followed by the Missouri

Supreme Court. Although Gateway should have cited these cases to the district court, it adequately preserved the issue for appeal.

Because the judgment on Gateway's contract claim is greater than Morrison's judgment on the counterclaim, Morrison is entitled to no prejudgment interest. The district court's January 6, 1994, Amended Judgment that included prejudgment interest is vacated. The court's original judgment of April 8, 1993, is affirmed.