INVESTORS TITLE COMPANY,
Respondent/Cross–Appellant,

v.

CHICAGO TITLE INSURANCE COMPANY and Chicago Title and Trust Company, Appellants/Cross–Respondents,

Nos. 72976, 73003.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 13, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 19, 1999.

Application for Transfer Denied
Feb. 23, 1999.

Alan C. Kohn, Robert F. Murray & Jennifer S. Forsythe, Bryon E. Francis, St. Louis, Mark S. Levine, Tallahassee, FL, for appellant.

John E. Bardgett, Sr., Nelson L. Mitten & R. Thomas Avery, St. Louis, for respondents.

CRANDALL, Judge.

Defendants, Chicago Title Insurance Company and Chicago Title and Trust Company, appeal from the judgment, in a court-tried action for breach of contract, in favor of plaintiff, Investors Title Company, and from the denial of prejudgment interest on the judgment in favor of Chicago Title Insurance Company on its counterclaim for breach. Plaintiff cross-appeals from the denial of prejudgment interest on the judgment entered in its favor. We affirm.

The evidence established that plaintiff, Investors Title Company (hereinafter Investors), was a corporation engaged in the business of selling title insurance to commercial and residential customers in an area which encompassed the City of St. Louis, St. Louis County, and St. Charles County. Defendant, Chicago Title Insurance Company (hereinafter Chicago Insurance), was a corporation engaged in the business of underwriting title insurance policies and selling policies through agents and direct sales offices. Chicago Insurance was a subsidiary of defendant, Chicago Title and Trust Company (hereinafter Chicago Trust), a holding company.

In December 1986, Chicago Insurance and Investors entered into a contract, titled "Issuing Agency Contract." The contract provided that Investors would be an agent of Chicago Insurance for marketing and selling title insurance underwritten by Chicago Insurance. In addition to contract provisions describing the duties of Chicago Insurance and Investors, Investors added an addendum which included the following three paragraphs:

21. Principal [Chicago Insurance] will direct all referrals Principal [Chicago Insurance] controls to Agent [Investors] in the three counties covered by this Agreement.

22. During the terms of this Agreement, Principal [Chicago Insurance] agrees not to directly and/or indirectly (i) solicit and/or sign new agents of Principal [Chicago Insurance] who write title insurance policies for property located within the counties described in paragraph 1 of the Agreement, or (ii) have an ownership interest in or control an agency which writes title insurance policies for property within the counties described in paragraph 1 of the Agreement. If Principal's [Chicago Insurance's] acquisition of SAFECO is approved, SAFECO agents who write title insurance policies for the property within the counties described in paragraph 1 of the Contract may become agents of Principal [Chicago Insurance] and will not be considered new agents.

24. Whenever possible, Principal [Chicago Insurance] shall use its best efforts to promote in the counties covered by this Contract the business of Investors.

In December 1990, Chicago Trust, Chicago Insurance's parent company, announced that it had acquired Ticor Title Insurance Company (Ticor), which maintained a direct operation in St. Louis County for the sale of title insurance. Shortly thereafter, the president of Investors notified the officers of Chicago Insurance that it viewed the acquisition of Ticor to be in violation of their agreement. Chicago Insurance responded that the acquisition was by Chicago Trust who was not a party to the contract with Investors. Investors had "numerous" conversations with Chicago Insurance through the "late winter of 1994" about the Ticor acquisition. The contract was amended on four separate occasions after the Ticor acquisition and each time the amendments provided the contract would otherwise "remain unaltered and in full effect."

Chicago Trust had three title insurance subsidiaries, each of which competed with the other on a nationwide basis; namely, Ticor, Security Union, and Chicago Insurance. All three subsidiaries had the same manager who was based in Chicago. This manager was an officer of all three subsidiaries: vice-president of Chicago Insurance, executive vice-president of Ticor, and vice-president of Security Union. The Missouri–Kansas area manager, who had been an area manager for Chicago Insurance, became Missouri–Kansas area manager for all three subsidiaries. In addition, the Ticor St. Louis manager reported to the area manager for Chicago Insurance in downstate Illinois. Despite efforts to improve services in Ticor's St. Louis office, sales declined and the office closed in October 1994.

From the time Chicago Trust acquired Ticor, several disputes arose between Investors and Chicago Insurance, one of which was Investors' displeasure with the Ticor acquisition. In October 1993, attempts were made to resolve the conflicts. In the spring of 1994, Investors stopped making remittance payments to Chicago Insurance as required by the contract. Chicago Insurance then terminated Investors's agency in August 1994.

Investors brought the present action against Chicago Insurance and Chicago Trust for breach of contract for failing to comply with paragraphs 21, 22, and 24 of the agency contract. Chicago Insurance counterclaimed for breach of contract and requested damages for monies due from Investors under the contract.

After a court-tried case, the trial court found that Chicago Insurance breached paragraphs 21, 22, and 24 of the contract. The court determined that Chicago Trust was liable for Chicago Insurance's breaches because Chicago Insurance was the alter ego of Chicago Trust. The court awarded damages to Investors based upon 100 percent of Ticor's income during the period of the breach, less expenses, for a total of $3,023,138.00. The court entered judgment in favor of Investors in that amount and awarded prejudgment interest in the amount of $1,177,394.00. The court also entered judgment in favor of Chicago Insurance on its counterclaim in the amount of $618,921.53. Later, the court amended its judgment, deleting the award of prejudgment interest to Investors; and denied Chicago Insurance's motion for prejudgment interest.

Defendants, Chicago Insurance and Chicago Trust, appeal from the judgment in favor of Investors and from the denial of prejudgment interest on the judgment in favor of Chicago Insurance on its counterclaim. Investors cross-appeals from the denial of prejudgment interest on the judgment entered in its favor. We have consolidated the appeals for our review. Investors does not challenge the judgment on the counterclaim in favor of Chicago Insurance.

■ The standard of review in a court-tried case is guided by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

■ As a preliminary matter, we note that defendants' challenge to the trial court's "wholesale adoption" of Investors's proposed findings of fact and conclusions of law is without merit. The trial court's adoption of a party's proposed findings of fact and conclusions of law is not per se error, as long as there are no inconsistencies between the findings of fact and the actual facts and the legal conclusions are sufficiently specific to permit meaningful review. *Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257, 260 (Mo.App. E.D.1995).

In their first point on appeal, defendants contend the trial court erred in holding that they breached paragraphs 21, 22, and 24 of the agency contract with Investors. We have reviewed the record and find that the trial court's determination that defendants breached the contract was supported by substantial evidence and was not against the weight of the evidence. No error of law appears. Defendants' first point is denied. Rule 84.16(b).

■ In their second point, defendants claim the trial court erred in declining to hold that Investors was barred by the doctrine of equitable estoppel from asserting its claim for breach of contract or that Investors waived defendants' breach of the contract.

■ Estoppels are not favorites of the law and will not be invoked lightly. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169, 174 (Mo.App.1982). Yet, estoppel arises from the unfairness of permitting a party to assert rights belatedly if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed condition. *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 131 (Mo.App.1991). To prevail on an estoppel theory, the party asserting estoppel bears the burden of establishing by clear and satisfactory evidence every fact essential to create an estoppel. *Smith*, 639 S.W.2d at 174. To support estoppel, there must be a representation made by the party estopped and relied upon by another party who changes his position to his detriment. *Bass v. Rounds*, 811 S.W.2d 775, 779 (Mo.App.1991). The representation may be manifested by affirmative conduct, either acts or words, or by silence amounting to concealment of material facts. *Id.* These facts must be known to the party estopped and unknown to the other party. *Id.*

Here, the trial court found that defendants could not point to any acts by Investors which were inconsistent with its position that defendants should comply with the terms of the contract. This conclusion is supported by substantial evidence. Shortly after learning of the acquisition of Ticor by Chicago Trust, the president of Investors notified the officers of Chicago Insurance that Investors viewed the acquisition to be in violation of their agreement and renewed its objection to the acquisition on numerous occasions. Defendants' officers admitted receiving these complaints. In addition, when the contract was amended after the Ticor acquisition, the amendments provided that the contract would otherwise remain unaltered and in full force and effect. Finally, when attempts to reach a resolution of the Ticor problem failed in October 1993, Investors withheld payments from defendants due under the agreement.

■ Defendants' argument that Investors waived its right to assert defendants' breach of contract is equally without merit. A waiver is the intentional relinquishment of

a known right. *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404, 409 (Mo.App. E.D.1996). To rise to the level of waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible. *Id.* As indicated above in our discussion of estoppel, Investors's conduct did not manifest an intent to renounce the right to claim breach of contract against defendants. Defendants' second point is denied.

In their third point, defendants challenge the trial court's award of damages based upon all profits generated by Ticor during the period of operation. In their fourth point, defendants charge error in the trial court's finding that Chicago Trust was the alter ego of Chicago Insurance. We have reviewed the record and find that the trial court's holding with regard to these two claims of error was supported by substantial evidence and was not against the weight of the evidence. No error of law appears. Defendants' third and fourth points are denied. Rule 84.16(b).

In their fifth point, defendants contend the trial court erred in not awarding Chicago Insurance prejudgment interest on the damages awarded on its counterclaim against Investors. We disagree.

In *Gateway Western Ry. Co. v. Morrison Metalweld Process Corp.,* 46 F.3d 860 (8th Cir.1995), the federal court of appeals interpreted Missouri law and determined that defendant was entitled to no prejudgment interest on the judgment on its counterclaim. The court reasoned that because the judgment on plaintiff's contract claim was greater than the judgment on defendant's counterclaim, the judgment on the counterclaim was setoff against the judgment in favor of plaintiff and thus defendant was entitled to no prejudgment interest. *Id.* at 864. Here, the judgment on Investors's breach of contract claim was greater than the judgment on Chicago Insurance's counterclaim and the judgment on the counterclaim was setoff against the judgment in favor of Investors. Thus, Chicago Insurance was entitled to no prejudgment interest on its counterclaim. Defendants' fifth point is denied.

In its cross-appeal, Investors contends the trial court erred in not awarding prejudgment interest on its judgment against defendants. The trial court originally awarded Investors prejudgment interest; but on defendants' motion to amend the judgment, the trial court deleted the award of prejudgment interest.

As a general rule, interest is not allowable prior to judgment upon an unliquidated claim for the reason that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay. *Scullin Steel Co. v. Paccar, Inc.,* 708 S.W.2d 756, 766 (Mo.App. 1986). In order to be liquidated as to bear interest, a claim must be fixed and determined or readily determinable, but it is sufficient if it is ascertainable by computation or by a recognized standard. *Id.* In a suit for breach of contract, no interest is allowable where the measure of damages sought and awarded is lost profits. *Id.* (citing *Wiggins Ferry Co. v. Chicago & A.R. Co.,* 128 Mo. 224, 27 S.W. 568, 574 (1894)). Accordingly, in view of the *Scullin Steel* decision, the trial court did not err in refusing to allow prejudgment interest on Investors's breach of contract claim because the damages were the profits lost by Investors during the period of the breach.

Investors cites to *Schmidt v. Morival Farms,* 240 S.W.2d 952, 961 (Mo.1951) for the proposition that prejudgment interest is allowable on a judgment awarding "lost profits." In *Schmidt,* a portion of damages awarded to the plaintiff for breach of an employment contract consisted of "25 % of net profits realized from the operation of the farm." *Id.* at 955. The court allowed prejudgment interest on this measure of damages. *Id.* at 961. Although Investors characterizes the measure of damages in *Schmidt* as "lost profits," those damages were not identical to the damages awarded in the instant action. Here, Investors's "lost profits" were all of the profits Investors failed to realize as a direct result of defendants' diverting title insurance business to Ticor and not referring the business to Investors. In contrast, the "lost profits" in *Schmidt* con-

sisted of a predetermined share of the profits from the operation of the farm which plaintiff failed to receive as a result of defendant's breach of the employment contract. These "lost profits" are not the same and the *Schmidt* decision is not controlling. Investors's cross-appeal is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and AHRENS, J., concur.