# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3941

_____

Macheca Transport Company, doing business as Gateway Cold Storage; David Macheca; Starlin Macheca

*Plaintiffs - Appellants*

v.

Philadelphia Indemnity Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2013
Filed: November 21, 2013

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This is an insurance coverage dispute between Macheca Transport Company (Macheca) and Philadelphia Indemnity Insurance Company (Philadelphia) arising from an ammonia leak which occurred in a refrigerated warehouse in November 2001. The dispute has resulted in extended litigation. An initial appeal to our court reversed a summary judgment in favor of Philadelphia. See Macheca Transp. v.

Phila. Indem. Co., 463 F.3d 827, 834 (8th Cir. 2006) (Macheca I). On remand, the district court again granted summary judgment to Philadelphia on one of Macheca's two coverage theories and dismissed a vexatious refusal-to-pay claim. A jury then resolved the remaining issues in Philadelphia's favor. Macheca filed a second appeal. We concluded the district court erred in granting the second summary judgment to Philadelphia and remanded for further proceedings. See Macheca Transp. v. Phila. Indem. Co., 649 F.3d 661, 675 (8th Cir. 2011) (Macheca II). Following a second trial, a jury awarded Macheca $174,964 in damages.

Macheca now appeals for a third time. Macheca contends its damages were erroneously reduced by amounts it recovered from a separate insurance carrier, and further claims the district court erred in denying its request for prejudgment interest. We affirm in part, reverse in part, and remand.

I

We refrain from fully explaining the factual background involved in this case and instead focus on the facts relevant to the limited issues raised in this appeal.[1] The second jury trial addressed solely the amount of damages Macheca claimed for certain categories of loss covered under Philadelphia's policy. Significantly, Macheca had a separate policy issued by another insurer, Travelers Insurance Company (Travelers), which provided coverage for some of the same losses covered by the Philadelphia policy. Travelers paid Macheca a total of $348,481.70 (hereinafter the Travelers payment) for losses resulting from the ammonia leak, which included payments for property damage and lost business income. In the jury instructions for the second trial, the district court told the jury it "must not award damages to [Macheca] for any amount already paid by Travelers Insurance Company." Appellant's Appendix at 178.

---

[1]A more extensive discussion of the factual background is available in our opinions in Macheca I and Macheca II.

The Travelers payment was at issue in the first jury trial. Macheca argued Philadelphia's refusal to pay for property damage prevented it from making necessary repairs to the warehouse and claimed it could not get its business back to full strength without the repairs, causing it to suffer additional lost business income. In fact, based on Philadelphia's breach of the insurance contract, Macheca claimed it could recover all the damages it suffered notwithstanding the $500,000 policy limits for lost business income.

The Travelers payment was relevant to Macheca's claim for the full amount of lost business income in two ways. First, the parties disputed whether the Travelers payment should have been sufficient to allow Macheca to make necessary repairs and thereby stem any ongoing damage for lost business income. Second, there was an issue whether Macheca's claims against Philadelphia should be reduced by the amount Travelers had already paid.

The parties filed motions in limine addressing both the claim for an amount in excess of the $500,000 lost business income policy limits, as well as the question about whether the Travelers payment should reduce Macheca's overall damages. With respect to the policy limits issue, Philadelphia filed a motion in limine seeking to prohibit Macheca's witnesses from testifying about any claim to recover alleged business interruption losses in excess of $500,000. Macheca, in turn, filed a motion in limine asking to be allowed to introduce evidence of the full amount of its lost business income without regard to the policy limits. With respect to the Travelers payment, Philadelphia's second motion in limine sought, in part, to prohibit Macheca from introducing evidence of damages covered by the Travelers payment, contending Missouri law did not allow a party "to obtain duplicate damages in excess of their actual injury [and thus] any damages recovered by [Macheca] must exclude those elements for which Travelers has already compensated [Macheca]." District Court Docket # 171 at 2-3.

At the motion hearing, Philadelphia's counsel clarified that Philadelphia did not actually seek to exclude evidence of the Travelers payment during the trial, but rather sought to prevent Macheca from "attempt[ing] to recover for those business income losses which were already paid by Travelers . . . when it comes down to the analysis of submitting this to the jury." First Trial Tr. at 29. In other words, Philadelphia argued Macheca's evidence should account for the amounts paid by Travelers, and the jury should be instructed to reduce those amounts from any damages it may award. Id. at 30. In response, Macheca's counsel[2] explained that all three motions in limine were related. Macheca argued Philadelphia wanted the damage testimony on lost business income to be artificially capped at $500,000 even if the overall damages were greater than that, and then have the jury further reduce its award by the amount Travelers had paid. Macheca posed the hypothetical of its lost business income totaling $1 million, and having recovered $200,000 from Travelers, with remaining damages of $800,000. Even assuming the district court ruled Macheca's lost business income would be capped by the $500,000 policy limits, Macheca contended it should be able to recover the full policy limits under the posed hypothetical because its remaining damages would exceed $500,000. Macheca claimed Philadelphia instead wanted the jury to be told the $500,000 policy limit was an absolute ceiling from which the Travelers payment would be further subtracted, leaving a net recovery of just $300,000. See id. at 86-90.

After the district court ruled that Philadelphia's alleged breach of contract did not permit Macheca to recover more than the $500,000 policy limits, Macheca's counsel twice stressed the importance of still allowing Macheca to present evidence of the full amount of its lost business income, irrespective of the $500,000 policy cap or the amount of the Travelers payment. In doing so, Macheca's counsel acknowledged the Travelers payment would have to be deducted:

---

[2]Two attorneys represented Macheca at the motion hearing. We refer to both attorneys generically as "Macheca's counsel."

If because of their breach of the insurance policy our business interruption claim now exceeds $500,000 and based upon Your Honor's ruling just now that we are limited to the $500,000, we should be entitled to put in evidence that our business interruption claim exceeded the $500,000 *and then deduct that portion of the Travelers payment that relates to the business interruption* so that we would be entitled . . . to recover the maximum that the parties agreed to and that Your Honor is limiting us to: $500,000.

Id. at 30 (emphasis added). Later in the hearing, Macheca's counsel again explained Macheca's view of the district court's ruling that any recovery against Philadelphia would be capped by the policy limits, and acknowledged the Travelers payment would reduce the damage award:

We have no problem with reducing the universe of our lost business income; the totality of it. *We have no problem with reducing it by what we got from Travelers.* But you have to tell the jury what you are subtracting it from; otherwise, you wind up with the totally inequitable and artificial result that if you don't tell the jury that they're going to be under the impression that you only had [$500,000 in total losses at] best. "And now we're going to [further] reduce that by what Travelers gave you," which is the worst of all possible worlds and utterly contrary to law.

Id. at 90 (emphasis added).

The district court ruled "the plaintiffs should be allowed to present evidence of their damages, even though they may not be able to recover the full amount of the loss of the damages they're claiming." Id. at 93.

In the ensuing first trial, Macheca presented its damage evidence consistent with the district court's ruling, that is, it offered testimony regarding the full amount of its alleged lost business income, but acknowledged receipt of the Travelers

payment and deducted it. Likewise, the closing argument given by Macheca's counsel tracked the evidence presented at trial by deducting the Travelers payment from each respective category of loss claimed against Philadelphia. When it came time to submit the issue to the jury, the district court told the jury it "must not award damages to [Macheca] for any amount already paid by Travelers Insurance Company." District Court Docket # 281 at 9. The transcript from the first trial's jury charge conference does not indicate Macheca specifically objected to that sentence in the jury instructions. See First Trial Tr. at 1014-26.

As noted above, Macheca appealed after the first trial, raising a host of coverage, evidentiary, and post-trial issues. Notably absent from Macheca's appeal, however, was any claim the district court erred with respect to its rulings on the $500,000 policy limits, the manner in which Macheca was allowed/required to discuss the Travelers payment when introducing its damage evidence, or a challenge to the district court's instruction that the jury "must not award damages to [Macheca] for any amount already paid by Travelers Insurance Company."

When this case went to trial for a second time, Macheca's evidence with respect to the Travelers payment essentially mirrored the evidence presented at the first trial for all material purposes. Macheca acknowledged receiving the Travelers payment and accounted for it when calculating its overall losses. After being instructed that it "must not award damages to [Macheca] for any amount already paid by Travelers Insurance Company" (just as the first jury had been instructed), the second jury ultimately returned a verdict in favor of Macheca awarding $90,981.28 for property damage, $54,238.84 for lost business income during the period reasonably required to repair the property, and $29,743.88 for necessary expenses incurred by Macheca, for a total award of $174,964.

After judgment was entered, Macheca filed a post-trial motion under Rule 59(e) of the Federal Rules of Civil Procedure. Macheca asked the judgment to be amended

-6-

to include an award of prejudgment interest under section 408.020 of the Missouri Revised Statutes.[3] Macheca also asked the judgment to be altered or amended "to reverse the improper deduction from plaintiffs' damages of the amount paid by Travelers Insurance to plaintiffs." Appellant's Appendix at 184. In the alternative, Macheca asked for a new trial under Rule 59(a) "as a result of the deduction from the judgment in favor of plaintiffs of the amount paid . . . by Travelers Insurance[,]" arguing the payment was a collateral source under Missouri law. Id. at 195.

The district court denied Macheca's request for prejudgment interest, concluding Macheca failed to show the damages awarded by the jury met the criteria for an award of prejudgment interest under Missouri law. See, e.g., Bailey v. Hawthorn Bank, 382 S.W.3d 84, 106 (Mo. Ct. App. 2012) ("Three requirements must be met before [prejudgment] interest can be awarded on a claim: (1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due.") (internal quotation marks and citation omitted). More specifically, the district court held Macheca's damages were not reasonably ascertainable at the time a demand for payment was made, focusing on the disputed and uncertain methods involved in this litigation for calculating the damage amounts. In addition, the district court determined Missouri law allowed it to be guided by equitable principles and fairness in deciding whether to award prejudgment interest, and stated "[e]quitable principals [sic] do not support plaintiffs' request for prejudgment interest because the damage-

---

[3]Section 408.020 of the Missouri Revised Statutes, in relevant part, states as follows:

Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made[.]

valuations demanded by plaintiffs were inconsistent with Missouri law." Addendum at 6. From an equitable standpoint, the district court also found compelling the fact that the jury's award of $174,964 was less than a settlement offer of $200,000 Philadelphia made in February 2005.

With respect to Macheca's argument about the allegedly improper reduction of damages based on the Travelers payment, the district court said Macheca's position is "contradictory to the position that the plaintiffs took at the earlier trial, which is that the plaintiffs were not entitled to and were not seeking to recover damages that included any amount that Travelers already paid. So I don't understand why you're taking a 180-degree different position today." Second Trial Tr. at 489. The district court ultimately denied Macheca's Rule 59(e) motion, stating the Travelers payment was "not collateral source." Id. The district court also denied Macheca's alternative request for a new trial, concluding the "Other Insurance" clause[4] in Philadelphia's policy would have prevented Macheca from recovering for amounts already paid by Travelers in any event, where Travelers did not contest coverage and made payments prior to Macheca filing a lawsuit against Philadelphia.

_____

[4]The "Other Insurance" clause provided as follows:

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

District Court Docket #52-4 at 32.

Macheca filed a timely appeal. On appeal, Macheca claims the district court erred in denying its Rule 59(e) motion on both the issue of prejudgment interest and the reduction of damages to account for the Travelers payment. Macheca also raises a number of other claims involving the Travelers payment, arguing the district court erred by (1) admitting evidence of the Travelers payment for the purpose of reducing Macheca's damages, (2) instructing the jury not to award damages for any amount already paid by Travelers, (3) allowing Philadelphia to request a credit for the Travelers payment without having asserted that issue as an affirmative defense prior to trial, and (4) denying the motion for a new trial based on the "Other Insurance" clause because Philadelphia failed to raise that issue as an affirmative defense prior to trial.

## II

### A. The Travelers Payment

Macheca first contends the Travelers payment constitutes a collateral source under Missouri law, and should not have been used to reduce its overall damage award. As explained above, Macheca raised this argument in various contexts, challenging certain evidentiary rulings the district court made during trial, one of the district court's jury instructions, the denial of the Rule 59(e) motion, as well as the denial of the motion for a new trial under Rule 59(a).

We do not recite the varying standards of review that apply to each of the contexts in which Macheca raises it argument about the Travelers payment because it is unnecessary to address each claim separately. Nor will we address the merits of Macheca's collateral source argument. All of Macheca's claims regarding the Travelers payment, in whatever context raised, are governed by the same principle: under the law-of-the-case doctrine, Macheca is barred from claiming the Travelers payment should not have reduced its damages because that issue was decided during

-9-

the first trial and Macheca did not appeal it. See Arizona v. California, 460 U.S. 605, 618 (1983) (stating the general principle that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); see also Alexander v. Jensen-Carter, 711 F.3d 905, 909 (8th Cir. 2013) (same).

For over one hundred years, our court has repeatedly barred parties from litigating issues in a second appeal following remand that could have been presented in the first appeal. See Clark v. Brown, 119 F. 130, 132 (8th Cir. 1902) (refusing to allow an appellant to challenge the validity of an order appointing a receiver in a second appeal where the appellant did not challenge the receiver's appointment in his first appeal); Richardson v. Commc'ns Workers of Am., AFL-CIO, 486 F.2d 801, 804 (8th Cir. 1973) ("The earlier judgment of the district court is the law of the case as it reflects upon any possible defenses to liability of the two unions. . . . The defendants' failure to properly preserve these defenses in their motion for directed verdict in the original trial and their total abandonment of these issues on the original appeal precluded their consideration in the second trial and prevents the unions from belatedly raising these issues on [the second] appeal."); Lupo v. R. Rowland & Co., 857 F.2d 482, 484 (8th Cir. 1988) (concluding two attorneys challenging a district court's jurisdiction to impose Rule 11 sanctions against them "waived any objection they may have had regarding" the proper entry of judgment under Rule 58's separate document requirement in a second appeal because "an [initial] appeal was heard by this court on the merits of the case . . . and this issue was apparently not raised by the parties"); United States v. Russ, 861 F.2d 184, 185 (8th Cir. 1988) (concluding the law-of-the-case doctrine prevented an appellant from contesting, in a second appeal, the amount of a deficiency judgment entered against him because he "should have raised this issue in his appeal from the initial district court order finding him liable for the amount stated in the complaint, and his failure to do so precludes further consideration of this claim"); Kessler v. Nat'l Enters., Inc., 203 F.3d 1058, 1059 (8th Cir. 2000) ("The general rule is that where an argument could have been raised on an

initial appeal, it is inappropriate to consider that argument on a second appeal following remand.") (internal quotation marks and citation omitted); <u>Sweat v. City of Fort Smith, Ark.</u>, 265 F.3d 692, 696 (8th Cir. 2001) (same); <u>United States v. Castellanos</u>, 608 F.3d 1010, 1019 (8th Cir. 2010) (same); <u>United States v. Bloate</u>, 655 F.3d 750, 754 (8th Cir. 2011) (same).[5]

Other circuits are in accord with us in recognizing this well-entrenched part of the law-of-the-case doctrine. As Judge Friendly from the Second Circuit observed, "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." <u>Fogel v. Chestnutt</u>, 668 F.2d 100, 109 (2d Cir. 1981).[6] A party who

---

[5]The slightly different consideration we give to appellees, as opposed to appellants, <u>see, e.g.</u>, <u>Castellanos</u>, 608 F.3d at 1019, does not apply here because Macheca was the appellant in both relevant appeals.

[6]<u>See also</u> <u>Stewart v. Dutra Const. Co.</u>, 418 F.3d 32, 36 (1st Cir. 2005) (noting "a party who failed to present an argument in previous appellate proceedings may not revive in the second round an issue he allowed to die in the first") (internal quotation marks and citation omitted); <u>Skretvedt v. E.I. DuPont De Nemours</u>, 372 F.3d 193, 203 (3d Cir. 2004) ("We have consistently rejected . . . attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings."); <u>United States v. Adesida</u>, 129 F.3d 846, 850 (6th Cir. 1997) ("The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not. A party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter[.]") (internal citation omitted); <u>Kossman v. Calumet Cnty.</u>, 849 F.2d 1027, 1030 (7th Cir. 1988) (declining to address an issue raised by a party in a second appeal when the issue was not raised in a first appeal); <u>Munoz v. Imperial Cnty.</u>, 667 F.2d 811, 817 (9th Cir. 1982) ("We need not and do not consider a new contention that could have been but was not raised on the prior appeal."); <u>United States v. Escobar-Urrego</u>, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for

successfully obtains a remand following an initial appeal has already gotten a second bite at the apple. We should not permit such parties to hold in reserve an argument regarding a particular issue, which is in play in both the first and second trials, just so they can attempt to receive yet a third bite at the same apple in the event they do not like the outcome of the second trial. To conclude otherwise would be unfair to opposing parties, encourage piecemeal appeals, and undermine our procedural efficiency. See Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc., 974 F.2d 502, 505 (4th Cir. 1992) ("Regarding this issue as having been waived furthers the judicial system's interests in avoiding piecemeal litigation. The most rudimentary procedural efficiency demands that litigants present all available arguments to an appellate court on the first appeal. If parties who lost on appeal were allowed to return to appellate courts to advance different, previously available theories, cases could languish for years before final resolution and already crowded court dockets would swell even more. In addition, it is not fair for an adversary to have to defend the same lawsuit on appeal over and over.").

The district court told the first jury not to award Macheca damages for any amount already paid by Travelers, and Macheca did not raise that issue in its appeal following the first trial. Macheca is thus barred from raising the issue in this appeal under the law-of-the-case doctrine, and we therefore affirm the district court with respect to all of Macheca's challenges on the issue of the Travelers payment.

future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.") (citation omitted); Nw. Ind. Tel. Co. v. F.C.C., 872 F.2d 465, 470 (D.C. Cir. 1989) ("It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand."); cf. Lindquist v. City of Pasadena, 669 F.3d 225, 239-40 (5th Cir. 2012) (making a distinction between the law-of-the-case doctrine and the waiver doctrine but nonetheless recognizing "that an issue that could have been but was not raised on appeal is forfeited" and may not be considered "during a second appeal") (internal quotation marks and citations omitted).

B.     Prejudgment Interest

Macheca next contends the district court erred in denying its claim for prejudgment interest. State law governs the issue of prejudgment interest in this diversity action. See Reliance Ins. Co. in Liquidation v. Chitwood, 433 F.3d 660, 665-66 (8th Cir. 2006). We apply de novo review to the district court's interpretation of state law. Williamson v. Hartford Life & Accident Ins. Co., 716 F.3d 1151, 1153 (8th Cir. 2013).

Prejudgment interest can only be awarded under Mo. Rev. Stat. § 408.020 on liquidated damage claims. Watters v. Travel Guard Int'l, 136 S.W.3d 100, 111 (Mo. Ct. App. 2004). Prejudgment interest is generally not available for unliquidated claims because "where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay." Id. (citing Fohn v. Title Ins. Corp. of St. Louis, 529 S.W.2d 1, 5 (Mo. 1975); Investors Title Co. v. Chicago Title Ins. Co., 983 S.W.2d 533, 538 (Mo. Ct. App. 1998)). "In order to be liquidated so as to allow interest, a claim must be fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard." Id. In addition, "prejudgment interest on liquidated claims is allowed only after demand of payment is made. If a demand for payment was not made prior to filing of a lawsuit, then the filing itself constitutes a demand." Id. (citations omitted).[7] However, "[a]n exact calculation of damages need not be presented in order for the claim to be considered liquidated. Damages may still be ascertainable, even in the face of a dispute over monetary value or the parties' experts compute different estimates of the loss." Comens v. SSM St. Charles Clinic Med.

---

[7]Macheca's counsel conceded "there was never a specific dollar amount claim submitted by the plaintiff before the claim was denied," First Trial Tr. at 17, so we conclude the filing of the complaint on December 23, 2003, constituted the demand for payment.

-13-

Grp., Inc., 335 S.W.3d 76, 82 (Mo. Ct. App. 2011) (internal quotation marks and citation omitted).

With these principles of Missouri law in mind, we agree with the district court that the damage awards for lost business income ($54,238.84) and for necessary expenses ($29,743.88) were not reasonably ascertainable for purposes of awarding prejudgment interest under § 408.020. Macheca's theories and claims for these two categories of damages vacillated over the course of this litigation, leaving Philadelphia unable to determine the amount it owed. For example, early in this dispute Macheca agreed with its other insurer (Travelers) that the warehouse could be repaired by March 2002 (which would thereby stem any ongoing claim for lost business income). Later, however, in correspondence exchanged with Philadelphia's counsel, Macheca represented it was financially unable to perform the necessary repairs as of December 2004 or January 2005. Even later, at the second trial, Macheca took the position that its poor financial condition entitled it to damages from Philadelphia for lost business income through the end of 2006 because of its inability to repair the warehouse. In addition, a claim for lost business income is very similar to a claim for lost profits, a category of damages Missouri has identified as inappropriate for an award of prejudgment interest. See Investors Title Co., 983 S.W.2d at 538-39 (holding prejudgment interest is not allowable in contract action where measure of damages sought and awarded is lost profits); Bailey v. Hawthorn Bank, 382 S.W.3d at 106-07 (indicating lost future profits is too uncertain to be "readily ascertainable" for purposes of § 408.020).

We disagree, however, that the property damage award ($90,981.28) was not reasonably ascertainable for purposes of allowing prejudgment interest on that category of loss. The damage to the warehouse floors and walls (as well as the product stored inside the warehouse) was calculable soon after the ammonia leak occurred. Moreover, the measure of damages for this category of loss (i.e., replacement cost for property loss) was never in dispute. See St. John's Bank & Trust

-14-

Co. v. Intag, Inc., 938 S.W.2d 627, 630 (Mo. Ct. App. 1997) (identifying a dispute over the proper measure of damages as a reason for denying prejudgment interest). In such a situation, a dispute over the actual amount owed should not preclude an award of prejudgment interest. See Comens, 335 S.W.3d at 82. Nor does Macheca's request for damages greater than the amount ultimately decided by the jury preclude such an award. See A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 397 (Mo. Ct. App. 1998) ("[A]n award of less damages than requested does not preclude an award of prejudgment interest on the ascertained damages.").

We therefore affirm the district court's denial of prejudgment interest on the claims for lost business income and necessary expenses, but reverse the denial of prejudgment interest on the claim for property damage.[8]

---

[8]We are not convinced the Missouri Supreme Court allows equitable principles to be considered when awarding or denying prejudgment interest on a liquidated damage claim. For this proposition, the district court relied upon City of Sullivan v. Truckstop Rests., Inc., 142 S.W.3d 181, 195 (Mo. Ct. App. 2004), a decision from the Missouri Court of Appeals. Although a number of recent decisions from the Missouri Court of Appeals state this same principle, our court earlier concluded otherwise. See Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003) ("Equitable principles of fairness and justice may not be considered when awarding prejudgment interest on a liquidated demand.") (quoting Huffstutter v. Mich. Mut. Ins. Co., 778 S.W.2d 391, 395 (Mo. Ct. App. 1989)). The divergent views of the Missouri Court of Appeals appear to originate from conflicting interpretations of a Missouri Supreme Court decision which held equitable principles may be considered when awarding prejudgment interest. See Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. 1987). As Huffstutter notes, however, Catron involved an *unliquidated* demand for damages, not a *liquidated* demand. 778 S.W.2d at 395. Under our de novo review of the prejudgment interest issue, we conclude Macheca is entitled to prejudgment interest on its property damage claim and not entitled to prejudgment interest on its other damage claims, without having to resort to equitable principles of fairness and justice. We therefore find it unnecessary to resolve the discrepancy between Emmenegger and some of the decisions from the Missouri Court of Appeals.

## III

We affirm the judgment to the extent the damages were reduced by the Travelers payment. We also affirm the denial of prejudgment interest on the amounts the jury awarded for lost business income and necessary expenses. We reverse the denial of prejudgment interest on the award for property damage, however, and remand for further proceedings.

_____